THE STATE *ex rel.* KANSAS CITY v. FIELD, *Judge.*

1.  **Municipal Corporation:** CHARTER : KANSAS CITY.   The charter of Kansas City adopted April 8, 1889, by its qualified voters, in pursuance of article 9, section 16, of the state constitution, and the act of the legislature of March 10, 1887 (Acts, p. 42), authorizing cities having a population of more than one hundred thousand to frame a charter, creates for said city a complete system of local self government.

2.  ———— : ———— : ————.   Such charter supersedes the act of the legislature of March 26, 1885 (Acts, p. 47) and the amendatory act of March 31, 1887 (Acts, p. 37), in relation to the manner of assessing damages and benefits in grading and regrading streets.

*Mandamus.*

PEREMPTORY WRIT AWARDED.

*O. H. Dean* for relator.

Kansas City had the power, in view of the general legislation on the subject of grading, enlarging and

improving streets, to provide a method or plan of its own for the improvement of its streets and public highways and for the assessment of benefits and damages. done to private property arising therefrom.

*Gage, Ladd & Small* for respondent.

The charter of Kansas City does not supersede the acts of the legislature on the subject of grading, enlarging and improving streets. Article 8 of said charter, set out in the petition and writ in this cause, is of no force or effect whatever.

BLACK, J.—Kansas City, by its proper officers, filed. in the circuit court of Jackson county a certified copy of an ordinance to grade a designated street, and asked. the respondent, who is one of the judges of that court, to appoint commissioners under article 8 of its charter to assess damages and benefits. The respondent declined to make the appointment under the provisions of the charter on the ground that article 8 is in conflict with the laws of the state, and for that reason void. Hence this application for the writ of *mandamus*.

The question in the case is whether the commissioners should be appointed, and the proceedings had under the charter, or under the act of the legislature of March 26, 1885 (Acts of 1885, p. 47), as amended by the act of March 31, 1887 (Acts of 1887, p. 37). Both the charter and this act of the legislature, as amended, point out a procedure for the assessment of damages and benefits in such cases, but they are so different that the court in following one must, of necessity, disregard and exclude all consideration of the other. The question is therefore one of vital importance to the validity of such proceedings in Kansas City.

The act of 1885, as amended, is a general law, and in terms applies to all cities in this state, except those of the second class organized under the general law, and

prescribes a method for the assessment of damages and benefits arising from grading and regrading streets in cities. It embraces no other subject, and was designed to carry into effect section 21 of article 2 of the constitution, which says private property shall not be taken or *damaged* for public use without just compensation. Prior to the adoption of its present charter, Kansas City was governed by a special act, so there can be no doubt but the act of 1885, as amended, applied to that city. The question in this case therefore, resolves itself into this, whether Kansas City is, by force of its recent charter, withdrawn from the operation of the act of 1885 and the amendment thereto. The present charter was adopted by the qualified voters at an election held on April 8, 1889, by authority of section 16 of article 9 of the constitution and of the act of the legislature of March 10, 1887. (Acts of 1887, p. 42.)

Section 16 of article 9 of the constitution provides: "Any city having a population of more than one hundred thousand inhabitants may frame a charter for its own government, consistent with, and subject to, the constitution and laws of this state, by causing a board of thirteen freeholders" to be elected, who shall return to the mayor a draft of the charter. The proposed charter shall then be submitted to the qualified voters and if ratified "it shall, at the end of thirty days thereafter, become the charter of such city, and supersede any existing charter and amendments thereof." The charter may be amended by a three-fifth vote of the qualified voters; "but such charter shall always be in harmony with, and subject to, the constitution and laws of the state."

The first section of the enabling act of March 10, 1887, is but a repetition of said section 16, of the constitution, with some matters added, of no value to the present inquiry. The second section enacts: "After the expiration of said thirty days after the ratification and

adoption of said charter, as aforesaid, such charter shall be, and constitute, the entire organic law of such city, and shall supersede all laws of this state then in force, in terms governing or appertaining to cities having one hundred thousand inhabitants, or more." The fiftieth section gives such cities exclusive control of the streets, and the exclusive power to vacate streets and alleys.

While the constitution says any city having the requisite population "may frame a charter for its own government," it also declares that such charter shall be "consistent with, and subject to, the constitution and laws of the state," and, as the law of 1885 is a general law, the claim is made on behalf of respondent, that the charter is subject to that law. The legislative power of the state is vested in a senate and a house of representatives, and, when it is declared that any city of the required population may frame and adopt a charter for its own government, the right thus granted, and the charter adopted, is subject to legislative control. The proposition made for relator, that, when any such city has adopted a charter, it is out of, and beyond, all legislative influence, cannot be sustained. We held to the contrary in the case of *Ewing v. Hoblitzelle*, 85 Mo. 76, 77.

Subject to this superior power of the legislature, the constitution accords to any city having the requisite population the right to frame and adopt a charter for its own government, which will supply its peculiar wants. Charters thus adopted will, of necessity, be more or less at variance, and that they will be unlike, in many respects, is within the contemplation of the constitution. It is also within the fair contemplation of the constitution that a charter thus adopted may embrace the entire subject of municipal government, and be a complete and consistent whole. The enabling act of March 10, 1887, is in perfect accord with the spirit of the constitution, and it discloses a well-defined purpose to clear the legislative field, and pave the way

for the adoption of a charter which will, of itself, present a complete system of local municipal government. It says the charter thus adopted shall be, and constitute, the entire organic law of such city. Stronger language could hardly have been selected to express the purpose and intention which we have said is disclosed by this act.

A system has grown up of legislating for cities by population, and, in view of this character of legislation, the argument is made that the second section of the enabling act exempts cities, framing and adopting their own charters, from such laws only as relate exclusively to cities having more than one hundred thousand inhabitants; that the exemption does not extend to those laws which apply alike to cities of over one hundred thousand, and to cities of a less population. This argument is based on that clause of the second section of the enabling act, which declares that the charter adopted by the qualified voters shall supersede all laws then in force "in terms governing or appertaining to the cities having one hundred thousand inhabitants or more." A law in terms governing or appertaining to all cities of this state would surely be a law in terms governing or appertaining to those cities having one hundred thousand inhabitants. The less is included in the greater. The construction, contended for, requires us to say for the legislature what it has not said for itself. Whether we look to the letter of this enabling statute, or are guided by its object, purpose and intent, the result is the same. Under it, laws, though general they may be, which relate alone to the government of cities, must yield to the provisions of the adopted charter.

This matter of assessing damages and benefits for grading and regrading streets naturally falls within the domain of municipal government. The act of 1885, as amended, is one of those laws which the enabling act declares shall be superseded by the adopted charter. When the present charter of Kansas City became a law,

the eighth article suspended and took the place of the general law of 1885. That a general law relating to municipal affairs may be in this way, in effect, repealed, so far as the particular locality is concerned, is established by *State v. Binder*, 38 Mo, 451.

Our conclusion is, that the charter of Kansas City, and not the act of 1885, as amended, is the law by which damages and benefits arising from grading and regrading streets, in Kansas City, are to be assessed. The peremptory writ is, therefore, awarded. All concur.