KANSAS CITY *ex rel.* NORTH PARK DISTRICT V. SCARRITT *et al., Appellants.*

In Banc, March 19, 1895.

1. **Constitutional Law:** STATUTE: CHARTER OF KANSAS CITY. The act of April 1, 1893, by which the legislature sought to amend the charter framed by the freeholders of Kansas City, in respect of a matter of local municipal government, is unconstitutional and void, because in violation of the grant, in the constitution of 1875, to such cities of power to frame their own charters, and permitting amendments thereto by the action of the people of the city, "and not otherwise."

2. ———: CONSTRUCTION. In construing a constitution, general language should not be interpreted so as to nullify a specific provision on a particular subject.

3. ———: STATUTES: MUNICIPAL CORPORATIONS. Legislation for the regulation of strictly municipal affairs must conform to section 7 of article 9 of the constitution, governing the classification of city charters, as well as to other parts of the organic law of the state.

4. ———: ———: ———. The object and purpose of the constitutional provisions, forbidding special legislation in regard to the internal affairs of cities, are discussed in the opinion; and it is held that they do not intend to prohibit genuine general legislation which shall govern these cities as well as other parts of the state, but to limit the power of the legislature to directly amend the charters of cities, except in the manner sanctioned by the constitution.

5. ——— : ———. No act of the legislature should be pronounced un-constitutional, unless it is very clearly so.

*Appeal from Jackson Circuit Court.*—Hon. J. H. Slover, Judge.

Reversed and remanded.

*W. C. Scarritt* and *J. K. Griffith* for appellants.

The court erred in overruling appellant's objection to the introduction of any testimony in this case, because the act of the legislature under and by virtue of which the proceeding is had is unconstitutional and void. *First.* Because the purposes of said act are not clearly defined in its title, and the act contains more than one object. Const. of Mo., art. 4, sec. 28. *Second.* The act is at war with the following provision of article 9, section 17, of the constitution, by which the legislative powers of cities of the class to which the act in question refers is vested in two houses of legislation: Art. 9, sec. 17: "It shall be a feature of all such charters that they shall provide, among other things, for a mayor or chief magistrate, and two houses of legislation, one of which, at least, shall be elected by general ticket." *Third.* Said act is void, because it is special legislation, prohibited by section 53, article 4, of the constitution. Art. 4, sec. 53: "The general assembly shall not pass any local or special law * * * regulating the affairs of counties, cities, townships, wards or school districts * * * authorizing the laying out, opening, altering or maintaining roads, highways, streets or alleys, * * * relating to cemeteries, graveyards or public grounds not of the state, * * * regulating the practice or jurisdiction of, or changing the rules of evidence in any judicial proceeding or

inquiry before courts, justices of the peace, sheriffs, commissioners, arbitrators or other tribunals, or providing or changing methods for the collection of debts, or the enforcing of judgments, or prescribing the effect of judicial sales of real estate   *   *   *." *State ex rel. v. Herrmann,* 75 Mo. 340; *State ex rel. v. County Court,* 89 Mo. 239; *State ex rel. v. Tolle,* 71 Mo. 650; *State ex rel. v. Miller,* 100 Mo. 448; *Murnane v. St. Louis,* 123 Mo. 479. *a.* The act applies to Kansas City alone, because carrying it into effect in at least a dozen instances the officers of the board of public works are required. And no other city in the state organized as a constitutional city has a board of public works. The provisions of the act show the evident intent and purpose of the framers of this law to have been to make a law applicable to Kansas City alone, and its provisions are so drawn that at this time it can not, and doubtless never will, apply to any other city. *Murnane v. St. Louis,* 123 Mo. 479. *b.* Even though the act may be held to apply to all cities that are hereafter to be organized under the provision of section 16, article 9, of the constitution, the act may, nevertheless, be held to be special legislation in that it attempts to regulate the practice or jurisdiction in judicial proceedings. Acts subject to this criticism can not be upheld on the theory that they apply to all cities of a particular classification. The rule in this particular is stated thus: "If they (the provisions of the act) operate upon the exercise of some power or duty of a municipality of the given class, or relate to some subject within the purposes of classification, they are general; otherwise they are local." *In re Wyoming St.,* 137 Pa. St. 503; *Weinman v. Railroad,* 118 Pa. St. 192; *In re Pittsburg,* 138 Pa. St. 401; *State ex rel. v. Field,* 99 Mo. 356.

*D. J. Haff, C. S. Palmer* and *C. O. Tichenor* for respondent.

(1) The act does not violate article 9, section 17, of the constitution and does not infringe upon the legislative powers of the common council. No legislative power proper is by this act vested in the board of park and boulevard commissioners, but, even if that were true, said section of the constitution does not say that the charter of a constitutional city, or the legislature may not vest some discretion in other agents of the city besides the "two houses of legislation," and, in fact, the charters of all the cities in this state, as well as the general law governing classified cities, do vest discretion in other agents than city councils. No more discretion is vested in the board of park and boulevard commissioners under this act than is given the board of public works, or public improvements in cities existing under special charters (Charter of Kansas City, 1889, article 6), and this provision of the constitution, or any other provision, does not prohibit the legislature from authorizing the appointment in such cities of special agents to discharge particular duties, for example, such as those to be discharged usually by the park commissioners, and such agents as park commissioners may be authorized to purchase lands for parks and to levy assessments to pay therefor. *State v. District Court*, 33 Minn. 235; *People v. Walsh*, 96 Ill. 232; *Astor v. Mayor*, 62 N. Y. 567. (2) *First.* The act in question is a general law, under the rules established by the decisions of this state. "A legislative act which applies to all persons who are in, or who may come into, like situations and circumstances, is general and not special." *Humes v. Railroad*, 82 Mo. 231; *Rutherford v. Heddens*, 82 Mo. 388; *Kelly v. Meeks*, 87 Mo. 396. *Second.* "Section 7 of article 9 does not prevent the application of general laws to cities having

special charters.    The latter cities were not affected by the constitutional provision referred to, as is apparent from its language." BARCLAY, J., in *Rutherford v. Hamilton*, 97 Mo., page 547. The act in question applies to all cities "which are now or may hereafter be organized under and by virtue of the provisions of section 16, article 9, of the constitution of this state," and to all cities, therefore, "which are in, or may come into, like situations and circumstances," and is, therefore, in form and in spirit a "general law." See Laws of Missouri, 1893, p. 43. *Third.* There are no officers referred to in said act which did not already exist, or which were not provided for prior to the passage of this act, in cities existing under special charters, by virtue of section 16 of article 9 of the constitution. Laws of 1893, p. 36, sec. 3. *State ex rel v. Field*, 99 Mo. 352; *Ewing v. Hoblitzelle*, 85 Mo. 64. (3) The statute under which this proceeding was brought (Laws of Mo., 1893, page 43), is not open to the charge that it is special legislation. It is in form and spirit a general law and not .in conflict with section 53, article 4, of the constitution. (4) The act in controversy does not create a class of cities; it is for a class fixed by the constitution itself. It regulates a matter purely municipal, for which some legislation is not only proper, but necessary. There is not only an excuse for the act, but there is also a necessity which arises from the peculiarities of the case. It is not gotten up to evade constitutional limitations. It neither interferes with any law of the state, nor with any person or property outside of the class which it governs; it evidently is for a class and not for certain persons or things of a class.

BARCLAY, J.—This is a proceeding, begun June 7, 1894, to subject to public use for a park a tract of some sixty acres of land in Kansas City, Missouri.

The plaintiff is "Kansas City at the relation and to the use of the North Park District."

The defendants are Mr. Nathan Scarritt and a number of other parties owning parts of, or interests in, the land sought to be taken for the park.

. The trial court found for the plaintiff, and entered judgment of condemnation, from which certain of the defendants appealed after the usual preliminaries.

The proceeding is grounded upon the provisions of an act, approved April 1, 1893, entitled: "An act empowering every city in this state which is now or may hereafter be organized under and by virtue of the provisions of section 16, article 9, of the constitution of this state, to establish and maintain for such city a system of parks and boulevards, to be under the control and management of a board known as board of park and boulevard commissioners, and defining the powers and duties of such commissioners." Laws, 1893, p. 43.

The objections to the result reached on the circuit do not refer to any matters of detail in the condemnation suit. They go deeper, and question the validity of the whole enactment.

It is claimed that the act is not in consonance with the organic law for several reasons; only one of which it is necessary to discuss.

The act in view undertakes to confer on every city of the sort indicated by its title certain charter powers for the establishment of a system of parks and boulevards.

It opens in this fashion:

"Section 1. Every city in this state which is now or may hereafter be organized under the provisions of section 16, article 9, of the constitution of this state, is hereby empowered to establish for such city a system of parks and boulevards, which shall be under the

control and management of a board known as board of park and boulevard commissioners. Said board of park and boulevard commissioners shall be composed of three freeholders of such city, well known for their intelligence and integrity, who shall be appointed by the mayor without confirmation, and whose term of office shall continue for a period of three years," etc.

The act then provides, for the organization of the board, and for replenishing the board from time to time.

It declares that the commissioners may, by ordinance of the common council of the city, be paid, out of the general funds of the city, annual salaries ranging from $500 to $1,000.

It is made the duty of the proposed board to arrange for a system of parks and boulevards, and to that end to "divide the entire city into two or more park districts."

Then follows a variety of details, in furtherance of the general design of the act, including an elaborate scheme for the condemnation of private property for public use for parks and boulevards in the city.

The proceedings under review were conducted to judgment in conformity to these features of the act in question.

It is unnecessary to go further into the particulars of the act; but its conclusion may well be quoted, viz.:

"Sec. 18. The provisions of this act shall not abrogate or impair any right or power which such cities may now or hereafter have, by law, to buy or condemn or otherwise obtain land for parks, roads, boulevards or avenues, or opening, widening or extending the same, or for improvement or maintenance thereof: *Provided*, the powers conferred by this act shall not be in any way impaired or restricted by this section; but this act

shall apply to all cities organized under the provisions of section 16, of article 9, of the constitution of this state, any provisions in the charter of any such city to the contrary notwithstanding."

The vital objection to this legislation is found in the fourth point of defendants' brief as follows:

"The act is inconsistent, and incompatible with the charter amendment in relation to parks and boulevards of Kansas City, adopted February 27, 1892, and violates that provision of the constitution authorizing cities, which elect to do so, to frame their own charters and establish a local self-government."

We must determine the force of this objection.

Kansas City is governed by a municipal charter, framed by her own people, in compliance with express authority given by the constitution, namely:

"Sec. 16. *Large cities may frame their own charters, how.* Any city having a population of more than one hundred thousand inhabitants may frame a charter for its own government, consistent with and subject to the constitution and laws of this state, by causing a board of thirteen freeholders, who shall have been for at least five years qualified voters thereof, to be elected by the qualified voters of such city at any general or special election; which board shall, within ninety days after such election, return to the chief magistrate of such city a draft of such charter, signed by the members of such board or a majority of them. Within thirty days thereafter, such proposed charter shall be submitted to the qualified voters of such city, at a general or special election, and if four sevenths of such qualified voters voting thereat shall ratify the same, it shall, at the end of thirty days thereafter, become the charter of such city, and supersede any existing charter and amendments thereof. A duplicate certificate shall be made, setting forth the charter proposed and its

ratification, which shall be signed by the chief magistrate of such city and authenticated by its corporate seal. One of such certificates shall be deposited in the office of the secretary of state, and the other, after being recorded in the office of the recorder of deeds for the county in which such city lies, shall be deposited among the archives of such city, and all courts shall take judicial notice thereof. Such charter, so adopted, may be amended by a proposal therefor, made by the lawmaking authorities of such city, published for at least thirty days in three newspapers of largest circulation in such city, one of which shall be a newspaper printed in the German language, and accepted by three fifths of the qualified voters of such city, voting at a general or special election, and not otherwise; but such charter shall always be in harmony with and subject to the constitution and laws of the state." (Const. 1875, art. 9).

The act now in dispute deals with subjects strictly within the domain of municipal government. *State ex rel. v. Field* (1889), 99 Mo. 356 (12 S. W. Rep. 802). It does not purport to bear upon the relations of any locality or of its people to the state government.

The act is in truth what it frankly professes to be, namely, an amendment to the charter of cities organized under the constitutional license above quoted.

Yet the language of the constitution on that point is, that a municipal charter, so obtained, may be amended by an action of the people of the city, and "not otherwise."

Surely we can not write those words out of the organic law, whose authority it is our duty to assert.

It is quite true that there are also provisions requiring such charters to be in harmony with, and subject to, the constitution and laws of the state. Those provisions are general declarations, inserted out of abund-

ant caution, and intended to expressly ordain what the courts would probably have held without them, namely, that valid laws, passed for the state at large, or otherwise conforming to the constitution, should apply to, and be fully operative within such cities.

But such general language can not justly be considered to override and nullify so specific and clear a command, in the same document, in regard to the mode in which such charters may be amended.

When the constitution declares how such amendments may be made, and that they shall not be otherwise made, it certainly does not mean that the legislature may adopt a different mode for such amendment, by direct legislation operating only upon such charters.

Even if it be granted that the outward form of the legislation in question would pass muster as a general law, under the liberal regulations in vogue touching that subject, still the purpose not to permit such a mode of amending charters adopted under section 16 is made more clear by another section (7) of the same article, relating to the identical subject in hand, viz.:

"Sec. 7. *Cities and towns, organization and classification.* The general assembly shall provide, by general laws, for the organization and classification of cities and towns. The number of such classes shall not exceed four; and the power of each class shall be defined by general laws, so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions. The general assembly shall also make provisions, by general law, whereby any city, town or village, existing by virtue of any special or local law, may elect to become subject to, and be governed by, the general laws relating to such corporations." (Const. 1875, art. 9.)

The force and scope of this part of the fundamental law were recently discussed in the *Murnane case,*

123 Mo. 479 (27 S. W. Rep. 711), and the opinion was then expressed that the section quoted was intended to limit the power of directly amending the charters of cities (organized since the adoption of the present constitution) to the mode pointed out in the section last above quoted.

Legislation for such amendment, regarding strictly local concerns, must not only be general in form, to comply with the demands of other parts of the constitution (art. 4, sec. 53), but it must likewise conform to the classification of cities, and of charter powers, prescribed by section 7 of article 9.

If the act under review were approved, there would be another class of city charters, created by general law conferring corporate powers, in addition to the classes permitted by section 7, which protests that "the number of such classes shall not exceed four."

Reading sections 7 and 16 of article 9 together, it would seem very clear that they forbid any such amendment to the freeholders' charter of Kansas City as the act before us attempts.

The record of legislation prior to 1875, contained in the session acts, furnishes the facts from which it is easy to infer the reasons that led to the adoption of those sections of the constitution.

City charters were the favorite ground for special legislation. The constant tinkering to which those instruments were subjected, not only created confusion and uncertainty in construing the law, but covered the state with specimens of incongruous pieces of patchwork legislation, which gave widely varied rights to, and imposed dissimilar duties and obligations on, the citizens of different localities, without any substantial grounds for those variances.

The object of the constitution of 1875, in dealing with this topic, was to secure some uniformity in the

organization and action of municipal corporations in the state. Hence the strict limitations laid down in regard to the classification of cities, and the prohibition of more than four classes of city charters (even when created by general laws of incorporation) under the new constitution. Leaving, however, special charters granted previously to continue in operation.

There was no design to isolate any of the cities from the great body of the people of the state, or to grant to any city special immunities or privileges. On the contrary, the idea was to place all those in like situation under like laws, civic duties and obligations.

All cities under the new constitution were to be subject to genuine general legislation. But those phases of purely municipal government which are properly regulated by charters were to be protected against the ancient mode of change; and to that end the classification of charters prescribed by section 7 of article 9 was ordained.

The provisions of the constitution that have been cited are not intended to interfere with the legitimate regulation, by general laws, of all those subjects which concern the relations of the state to the locality, or to prevent appropriate action by the lawmakers upon any of the topics regarding which the constitution sanctions legislation to give practical effect to its own commands, as explained in *Kenefick v. St. Louis* (1895), 127 Mo. 1 (29 S. W. Rep. 838). No such subjects or topics are in question here. The act under review relates solely to matters of internal municipal government. It seeks to amend the existing charter of Kansas City in a number of ways; and its last passages indicate plainly that such is its main design. It can not be supported without nullifying the guaranty which the fundamental law gives, in section 16, above quoted, against invasion of

the right of local self-government in the internal affairs of such cities.

While we should never pronounce an act of the general assembly void for want of conformity to the constitution unless it is very clearly so, yet, when such is the case, our duty requires us to declare it, and thus vindicate the supremacy of the organic law as the paramount expression of the will of the people of the state.

We consider that the act in view is a palpable departure from the precepts of the constitution, and that it can not stand.

The judgment is therefore reversed, and the cause remanded with directions to dismiss the proceedings. BRACE, C. J., and GANTT, MACFARLANE and ROBINSON, JJ., concur. SHERWOOD, J., concurs in reversing and remanding. BURGESS, J., concurs in the result, but does not wish to be understood as approving the decision in the *Murnane case.*

### ON MOTION FOR REHEARING.

PER CURIAM (BRACE, C. J., and BARCLAY, GANTT, MACFARLANE, SHERWOOD, BURGESS, and ROBINSON, JJ.). —It is claimed, in the motion for rehearing, that the decision rendered is not in harmony with some prior judgments of the court.

The importance of the question involved in the case justifies a short statement of our views as to the effect of the earlier decisions.

In *Ewing v. Hoblitzelle* (1884), 85 Mo. 64, an act regulating the registration of voters and the conduct of elections, in cities of over one hundred thousand population, was held valid and applicable to the city of St. Louis, although it overrode charter provisions of different import.

In the *State ex rel. Ziegenhein v. Railroad* (1893), 117 Mo. 1 (22 S. W. Rep. 910), provisions of a law (general throughout the state), regulating the mode of assessment of railroads for purposes of taxation, were held paramount to the terms of the charter of St. Louis.

The subject of the statutes construed in those cases authorized the legislature to deal with them in a very different manner from topics of purely internal municipal government.

"Legislation which is necessary or appropriate to carry into effect a positive command of the organic law, or is required or directly contemplated by its terms, can not justly be held to be either special or local within the true intent and meaning of the constitution." *Kenefick v. St. Louis* (1895), 127 Mo. 10 (29 S. W. Rep. 838).

That proposition had been already substantially recognized in *State ex rel. v. Hughes* (1891), 104 Mo. 459 (16 S. W. Rep. 489), in *State ex rel. v. Yancy* (1894), 123 Mo. 391 (27 S. W. Rep. 380), and in *State ex rel. v. Higgins* (1894), 125 Mo. 364 (28 S. W. Rep. 638).

The act construed in the *Hoblitzelle case* was plainly called for by the constitutional command in regard to the registration of voters in large cities (art. 8, sec. 5).

The act construed in *Ziegenhein's case* regulated the mode of assessment and collection of revenue necessary for the state.

By the separation of the city and county of St. Louis, the city was placed in a dual relation to the state government. It became invested with certain powers which in other parts of Missouri are exerted by county officers, as well as with the usual municipal powers for internal government.

Under the terms of the constitution the city was required to "collect the state revenue and perform all

other functions in relation to the state in the same manner as if it were a county." (Art. 9, sec. 23.)

It is plain that a general statute, regulating the assessment and collection of revenue, if found to be intended to apply to the whole state, should be construed by the courts as so applicable. That was the ruling made with reference to the statute discussed in the *Ziegenhein case.*

The same rule then maintained, touching the repeal of local laws in St. Louis, had been previously declared in *State v. Bennett* (1890), 102 Mo. 356 (14 S. W. Rep. 865), in dealing with a statute governing procedure in criminal causes.

As was pointed out in *Kenefick's case* in the first division, 127 Mo. 1 (29 S. W. Rep. 838), all such topics are within range of the constitutional power of the legislative department.

The protection, in regard to local affairs, accorded by the constitution to cities organized under the special license given in article 9 of that instrument, does not reach so far as to prevent legislation on the various subjects considered in the cases above mentioned.

In *Westport v. Kansas City* (1891), 103 Mo. 141 (15 S. W. Rep. 68), the ordinance for extending the limits of the latter city was held invalid, because it had not been submitted to a vote in the city. That was the point in judgment in that case; and that result was in accord with the one reached in the case at bar. The same may be said in respect of the decision *State ex rel. v. Field* (1889), 99 Mo. 352 (12 S. W. Rep. 802), which held that the freeholders' charter of Kansas City operated to repeal a prior statute of the state in respect of street opening proceedings, the latter being then held to be a subject which "naturally falls within the domain of municipal government," to quote the words of Judge BLACK in that case.

Other holdings of the court might be cited, in which statutes, applicable to cities having special constitutional charters, have been sustained because of the topics dealt with in those statutes, for instance:

*State ex rel. v. Tolle* (1880), 71 Mo. 645, which held that an act regulating the publication of legal advertisements in cities applied to St. Louis.

*State ex rel. v. Miller* (1890), 100 Mo. 439 (13 S. W. Rep. 677), in which an act, providing for, the management and government of the public schools in the large cities, was approved.

*State ex rel. v. Bell* (1893), 119 Mo. 70 (24 S. W. Rep. 765), which sustained an act regulating the mode of collecting revenue from dramshop licenses.

*State ex rel. v. Owsley* (1894), 122 Mo. 68 (26 S. W. Rep. 659), and *State ex rel. v. Slover* (1895), 126 Mo. 652 (29 S. W. Rep. 718), both holding that the law regulating the registration of voters applies to Kansas City.

The conclusions announced in all the cases mentioned are consistent with the principles applied in the case at bar, although remarks in some of those cases may be found which go further than the judgments, and may not be entirely reconcilable with this last ruling.    The precise point involved in this case was not adjudicated in any of the former judgments.

We consider the conclusion we have announced herein gives effect to the true meaning and purpose of the language of the constitution bearing upon it, and that our judgment does not conflict with any prior adjudication on a similar state of facts.

The earlier decisions, above referred to, should not be held to warrant the exercise of state legislative power over such city charters, so far as relates to the government of subjects of merely local and municipal concern, in view of the plain provisions of the constitution discussed in the opinion heretofore delivered in this cause.

We think the command in the organic law to the effect that the charter of Kansas City shall be amended by the acts of her own people, "and not otherwise," was written to be obeyed; and that it forbids the regulation and direction of purely municipal affairs in that city by act of the legislature. We believe that in authorizing Kansas City to frame a charter for its own government, the people of the state meant exactly what the constitution says, and nothing less.

It is our duty to declare the meaning of the organic law in accordance with its intent as we understand it. We do not feel at liberty to strike the words, "and not otherwise," out of their place as a part of the state charter. In the connection in which those words appear (art. 9, sec. 16), we consider them of mandatory force. We hold that they are binding on all departments of the state government.

We, therefore, overrule the motion for rehearing, and adhere to the judgment heretofore announced.