## BADGLEY v. CITY OF ST. LOUIS, Appellant.

### Division One, March 30, 1899.*

1. **City Charter:** VALIDITY OF ORDINANCE IN CONFLICT WITH STATUTE. Although the Constitution of 1875 gave the city of St. Louis authority to adopt a charter for "the government of the city in harmony with and subject to the Constitution and laws of Missouri," yet such grant did not authorize a provision regulating the practice and proceedings in the courts of the State in ordinary common law actions against said city; and where there is a conflict in such cases between the charter of the city and the statutes of the State, the latter must prevail.

2. ————: ACTION AGAINST CITY. The section of the charter adopted by the city of St. Louis, providing that when said city shall be made liable to an action on account of the wrongful or unauthorized act, or negligence of any person or corporation, such person or corporation shall be joined with the city as a defendant in any action therefor, and that unless there is a recovery against such other person or corporation, there can be no judgment against the city, is in conflict with section 1995 of the statutes of 1889, and the other sections of the code, and is therefore void.

3. ————: NEGLIGENCE: OBSTRUCTION AT TIME OF ACCIDENT: NOTICE. An instruction that told the jury that, if at the time of the accident to plaintiff's horse, dirt and rubbish had been so piled up on a street by others as to render it dangerous, plaintiff was entitled to recover damages against the city, was improperly given. The liability of the city in such case must be predicated upon its negligence in not causing the removal of such obstruction within a reasonable time after it had notice of the condition of the street, or by the exercise of proper care and diligence might have known thereof.

4. ————: ————: ————: EXCESSIVE DAMAGES. Where the damages awarded exceed the aggregate of the items testified to by the witnesses, the verdict is excessive.

*Appeal from St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

REVERSED AND REMANDED.

*NOTE.—Decided December 23, 1898. Motion for rehearing filed. Motion overruled March 30, 1899.

Badgley v. St. Louis.

B. Schnurmacher and Alexander Nicholson for appellant.

(1)   It appearing from plaintiff's petition, and from the uncontradicted and undisputed evidence, that if the city of St. Louis was liable in this case, the Farmers' Elevator Company was also liable, no judgment should have been rendered against the city of St. Louis, unless judgment was also rendered against said Farmers' Elevator Company.   Charter of St. Louis, art. XVI, sec. 9; Schweickardt v. St. Louis, 2 Mo. App. 571; Crocker v. Schureman, 7 Mo. App. 358; Donoho v. Vulcan Iron Works, 75 Mo. 405; Merrill v. St. Louis, 83 Mo. 254; Wiggin v. St. Louis, 135 Mo. 558. (2)   The instruction for plaintiff was clearly erroneous in a number of particulars.   (a)   There was no evidence that the city "permitted" dirt or other obstructions "to be placed" on Madison street.   (b)   It assumes that Madison street was a public street.   (c)   The instruction assumes that the horse's running upon or into the rubbish pile "caused said horse to fall, and thereby maim and injure himself."   (d) The instruction was erroneous upon the measure of plaintiff's damage.   It authorizes the jury to allow him the amount of injury or damage to the horse, and also the reasonable value of the use of the animal during the time he was unfit for service.   Had the horse been killed in the accident, plaintiff could only have recovered his value and no more.

Collins & Jamison for respondent.

(1)   It is the duty of a city to keep its street in a reasonably safe condition for persons who might travel thereon, either by day or night.   The evidence in this case conclusively shows that the city of St. Louis permitted and allowed this pile of rubbish to remain on a public street for at least three weeks, which was the cause of the damage to plaintiff's horse.   It is therefore liable to plaintiff for said damage. Carrington v. St. Louis, 89 Mo. 208; Kiley v. City of Kansas,

87 Mo. 103; Bassett v. St. Joseph, 53 Mo. 298; Russell v. Columbia, 74 Mo. 490; Goins v. Moberly, 127 Mo. 116; Frank v. St. Louis, 110 Mo. 516; Vogelsang v. St. Louis, 139 Mo. 127; Welsh v. St. Louis, 73 Mo. 71; Blake v. St. Louis, 40 Mo. 569; Bowie v. City of Kansas, 51 Mo. 454; Brennan v. St. Louis, 92 Mo. 482; Wiggins v. St. Louis, 135 Mo. 566. (2) This liability exists, although brought about by persons other than the agents of the city; and, although other parties may have originally piled the rubbish and dirt in the street, yet the city of St. Louis became liable by permitting it to remain there for three or four weeks. Russell v. Columbia, 74 Mo. 490; Bassett v. St. Joseph, 53 Mo. 298; Welsh v. St. Louis, 73 Mo. 71; Vogelsang v. St. Louis, 139 Mo. 127. (3) A policeman is an officer and agent of the city, and the knowledge of the policeman of the condition of the street was notice to and knowledge thereof on the part of the city. Carrington v. St. Louis, 89 Mo. 208. (4) It was not incumbent upon the plaintiff to prove that Madison street was a public street; that was a matter of which the court would take judicial notice. 12 Am. and Eng. Ency. of Law, pp. 151-169; Brady v. Page, 59 Cal. 52; Gardner v. Eberhart, 82 Ill. 316; State v. Warren, 57 Mo. App. 502. (5) Where a horse is injured by carelessness, the measure of damages is the expense of curing him, the value of his services while being cured and the difference between his value before and after the injury. Street v. Laumier, 34 Mo. 469.

WILLIAMS, J.—The city of St. Louis appeals from a judgment against it for $200. The suit is for damages on account of an injury to a horse belonging to plaintiff, which resulted from certain obstructions, which said city permitted to remain in one of its streets.

The action was begun before a justice of the peace against the Farmer's Elevator Company and the city of St. Louis. The trial there resulted in a judgment for the elevator company but against the city. The latter appealed.

The plaintiff took no appeal from the judgment rendered in favor of the elevator company.

An amended statement was filed in the circuit court and, in the caption thereof, the names of both defendants were mentioned. The court struck therefrom "The Farmers' Elevator Company," holding that it was no longer a party to the suit.

The gravamen of the complaint is that dirt, rubbish and other obstructions were placed in Madison street in said city, between Main street and the levee, and were negligently permitted by the city to remain there for two or three weeks prior to the seventh of November, 1892, unguarded and without any light or other warning to persons traveling along said street at night; and that said street, at that point, was thereby rendered unsafe and dangerous. The complainant further charges that during the night time, on the seventh of November, 1892, he was driving upon said street, and while he was in the exercise of due care, his horse came in contact with said obstruction, so carelessly permitted to remain in the street by the defendants, and was caused thereby to fall down, and received serious injuries. It is further alleged that said horse in consequence thereof "became permanently injured and damaged to the extent of $100, and that by reason of said injury to said horse as aforesaid, the said horse could not be used for a space of four months subsequent thereto, and that said plaintiff was damaged by the loss of the use of said horse in the sum of $50; that the plaintiff expended in the care of said horse the sum of $50, while injured as aforesaid." Judgment was asked for $200.

When the cause came on for trial in the circuit court, plaintiff was called as a witness in his own behalf, and testified that in 1892 he was in the express business in St. Louis.

The defendant here interposed an objection, to the introduction of any evidence, on the ground that the petition failed to state a cause of action against the city of St. Louis;

"and on the further ground that the suit was originally brought against the city and the Farmer's Elevator Company, and the case having been dismissed as to the elevator company, and judgment having been rendered against the city, the latter took an appeal, and no appeal was taken by the plaintiff from the judgment of dismissal entered by the justice in favor of the elevator company; and that by reason thereof, and of the facts set forth in the petition, which shows that, if the city was liable, so also was the elevator company, therefore, under the charter of the city of St. Louis, no right of action exists against the city of St. Louis." This objection was overruled and the trial proceeded.

Plaintiff introduced testimony to the effect that, at the time of the injury to his horse, there was a pile of dirt and rubbish near the middle of Madison street, about two and one-half feet high and about seven feet long. There was no light at the place, and while he was driving along the street, he could not see this obstruction and drove his horse into it. The horse was thrown down and "got tangled up in the harness and the shafts ran into his shoulders and crippled him."

Plaintiff employed a veterinary at a cost of $20. The use of the horse was worth $20 a month, and plaintiff was deprived of him for nearly three months on account of the injury. His value was about $125 before the accident and from $20 to $25 afterwards. The dirt and rubbish had been piled in the street for three or four weeks before the horse was hurt, and there was no light there that night.

At the close of plaintiff's case, the city offered a demurrer to the evidence, which the court refused.

Defendant then proved that the obstruction was placed in the street by men working for the Farmer's Elevator Company. A policeman stated that he saw these parties piling the dirt upon the street and that they had been piling it

there from time to time for three or four weeks. It had been accumulating that long and was not all put there at one time. He notified the elevator people to remove it, but did not report the condition of the street. He did not say that all of the pile of rubbish was placed in the street by the elevator company's employees, but he saw them throwing dirt there at different times.

The court at plaintiff's request, and over the defendant's objection, gave to the jury this instruction: "The court instructs the jury that if they believe from the evidence in this case that the defendant, the city of St. Louis, permitted dirt and other obstructions to be placed and remain on Madison street, between Main street and the levee, in the city of St. Louis, Missouri, and to remain there for three or four weeks prior to the 7th day of November, 1892, *and that said dirt and other obstructions were so piled upon said street upon the 7th day of November, 1892*, as to make the same dangerous for any citizen traveling along said public street, and using ordinary care in so doing; and that the horse and wagon of the plaintiff, without any negligence on the part of the plaintiff, while traveling along said street, ran upon said pile of dirt and rubbish, which caused said horse to fall, and thereby maim and injure himself, then the jury will find in favor of the plaintiff for such sum as they may believe from the evidence that the said horse was damaged or injured and for such additional sum as was reasonably expended for the care of said horse, and the reasonable value of the use of said horse during the time he could not be used by reason of such injury."

The court refused an instruction asked by defendant as follows: "The court instructs the jury that if they believe from the evidence that any other person or persons, company or companies, have been negligent in piling up the rubbish, etc., complained of, they will find for defendant, the city of St. Louis."

There was a verdict for plaintiff for $200, and after an unsuccessful motion for a new trial, this appeal followed.

## I.

This case presents an important question of practice, in cases wherein the city of St. Louis is a party, which deserves and has received our careful consideration.

The point was pressed at the trial, both by an objection to the introduction of evidence and in the instruction asked by defendant, and is renewed here, that, as plaintiff failed to obtain a judgment against the Farmer's Elevator Company, whose servants put the obstructions complained of in the street, the judgment against the city can not stand.

Reliance for this position is placed upon the following section of the charter of said city: "Whenever the city shall be made liable to an action for damages, by reason of the unauthorized or wrongful acts, or of the negligence, carelessness or unskillfulness of any person or corporation, and such person or corporation shall also be liable to an action on the same account by the party so injured, the injured party, if he sue the city for damages suffered by him, shall also join such other person or persons or corporation so liable, if residing in the State, so that they can be served with process, as a defendant or defendants in his suit, and no judgment shall be rendered against the city unless judgment is rendered against such other person or corporation so liable to be sued as aforesaid; and if any action be brought against the city alone, and it is made to appear that any person or corporation ought to be joined as a defendant in the suit, according to the provisions of this section, the plaintiff shall be nonsuited; but no person shall be liable under this act to be sued jointly with the city, who would not be liable to be sued separately, irrespective of its provisions. When a judgment shall be obtained against the city and the other party liable as aforesaid, execution shall issue against all the

defendants in the ordinary form, but shall first be enforced and collected of the other defendants and shall not be collected of the city unless the other defendants are so insolvent that the same can not be made out of them, and in that case the city shall pay only so much of the judgment as can not be made out of the other defendants."

The above provision in the charter of the city of St. Louis was not enacted by the General Assembly of the State. It is not contained in any statute passed by the legislature. Said charter was framed by a board of thirteen freeholders, by express authority of section 20, article IX, of the Constitution of 1875, which empowered said board to prepare a charter for the "government of the city, in harmony with, and subject to the Constitution and Laws of Missouri."

The charter so prepared was, in accordance with constitutional requirements, submitted to the qualified voters of said city, and was ratified by a majority of those voting at an election held for that purpose. It became, sixty days after said election, the organic law of the city and superseded the former charter granted by the legislature and all amendments thereto.

The question now confronting us is the validity of the charter requirement hereinbefore quoted. Has the city of St. Louis, under the constitutional grant to it of power to adopt a system of laws for "the government of the city," authority to regulate the practice and proceedings in the courts of this State, in ordinary common law actions against said city, or against said city and others, as is attempted in the section above copied? Shall the charter prevail in such cases, or must the statutes of the State govern?

This provision was before this court in Donoho v. Vulcan Iron Works, 75 Mo. 401, but it was not necessary to consider its validity in that case. It was up again in Merrill v. St. Louis, 83 Mo. 244. Plaintiff there had joined as a defendant the party whose wrongdoing was the primary cause

of the injury.  It therefore became unnecessary to pass upon the power of the city to require such joinder.   The last time it was presented was in Wiggin v. St. Louis, 135 Mo. 558.   It was there decided that plaintiff was entitled to his judgment against the city, notwithstanding the lower court had erroneously instructed the jury to find that the party sued jointly with the city was not liable; thereby, as appellant contends, rendering the charter provision of but little practical effect.

It will be observed that in none of these cases was the plaintiff defeated because of a failure to follow the directions of the section of the charter under consideration.   We are asked to reopen the matter and re-examine the questions decided in the Wiggin case, *supra*.

We find upon turning to the Revised Statutes of 1889, that this provision of the charter is in direct conflict with section 1995 of the statutes of the State.   Said section declares that "every person who shall have a cause of action against several persons, including parties to bills of exchange and promissory notes, and who shall be entitled by law to one satisfaction therefor, may bring suit thereon jointly against all, or as many of the persons liable as he may think proper."   It also overrides sections 2043 and 2047, which require that an objection on account of a defect of parties must be taken by demurrer or answer, otherwise it is waived.

None of the cases heretofore decided by this court sustain the right, set up by the city, to regulate and control the proceedings in the State courts, in ordinary suits at law or in equity, to which said city may be a party.

State ex rel. v. Field, 99 Mo. 352, was a proceeding to require the judge of the circuit court to appoint commissioners to assess damages and benefits arising from grading a street in Kansas City, which city also had power to adopt its own charter.  The requirements of said charter concerning the procedure differed, in some particulars, from the statutory provisions upon the subject.    It was held that the former

should control. This was expressly placed upon the ground that "the matter of assessing damages and benefits for grading and regrading streets naturally falls within the domain of municipal government." Kansas City ex rel. v. Scarritt, 127 Mo. 642; Kansas City v. Marsh Oil Company, 140 Mo. 458; and Stevens v. Kansas City, 146 Mo. 460, proceed upon the same principle. The charter provisions and the legislation thereunder, which the court was reviewing in those cases, were held to be controlling on the sole ground that the subjects to which they related were proper matters for *municipal* regulation and were included in the constitutional grant of power to frame a charter "for the government of the city." But these cases go no further.

They do not in any manner uphold the contention of the city in this case. Upon the contrary, GANTT, C. J., who wrote the opinion of the court in the Marsh Oil case, declared: "So long as Kansas City, under its special charter, does not invade the province of general legislation, or attempt to change the policy of the State as declared in her laws for the people at large, it will not be held to be out of harmony with such laws, notwithstanding the provisions of the special charter may be different from the general statutes prescribed for the government of other cities in their local affairs." Again, he said: "We think it was properly ruled that the special charter superseded the general statutes where the two conflicted as to a mere *municipal* regulation, and we hold that condemnation proceedings to acquire lands for streets, parks, waterworks, sewers, and the like, clearly fall within municipal regulation." The opinion in that case further holds that the legislation of the city then under review "is not open to the criticism that it attempts to regulate the practice, procedure, jurisdiction of the circuit courts, and changes the method of obtaining, rendering and enforcing judgments." Here, that *is* exactly what is attempted to be done. The plain inference from the language of the court in the above

case is that, if such had been the effect of the part of the charter then under consideration, it would have been held void.

The Constitution confers upon the city of St. Louis power to adopt a charter "for the government of the city," but the section before us goes further. It undertakes to regulate the practice in the courts of the State in cases where said city is an ordinary litigant.

Said charter must be "in harmony with the Constitution and laws of Missouri." This section repeals, however, *pro tanto*, the Code of Civil Procedure and substitutes one of its own. If the city of St. Louis can do this, it may likewise, in every case where said city is a party to a suit, supersede by charter provisions, the change of venue laws of the State, and those regulating the manner of summoning and impaneling juries. It may change the statute, in all such cases, as to the place of bringing suits, and the forum for the trial of the same, and it may also alter the form of pleadings therein. It has already attempted to direct the judgment that may be rendered and the manner of its enforcement. If this power exists, it may in fact amend any part of the Practice Act and form a Code to suit itself. We are not prepared to sanction such a construction of the power conferred by the Constitution upon our cities to frame charters for their own government. We think that the authority to make such changes in the Code as are now under consideration, is lodged by the organic law of Missouri in the General Assembly of the State, and not in any of its municipalities. If such legislation is desirable, it must emanate from the proper source.

The procedure in suits of the character of this one is not a matter for municipal regulation. It does not "fall within the domain of municipal government." [State ex rel. v. Field, *supra*.]

We are aware that the General Assembly has inserted

clauses somewhat similar to this in charters granted by it, but the legislature has power to change the Practice Act. The city has not.    Therein lies the difference.    It does not follow, by any means, that because the city is a party to an ordinary civil action, it may, under the power granted to provide municipal government, regulate the process and proceedings of the State courts in such cases.

We must, therefore, hold that the section of the charter relied upon by. appellant forms no obstacle to plaintiff's recovery. The statutes must control, and the trial court committed no error in overruling the objection to the introduction of evidence, and in refusing the instruction asked by defendant.

## II.

1.    The instruction given at plaintiff's request is erroneous.    It told the jury that if dirt and other obstructions were permitted to remain in the street for three or four weeks prior to the seventh of November, 1892, the day of the injury to plaintiff's horse, and that *on that day*, the same were so piled up on said street as to render the street dangerous, and that plaintiff's horse was hurt in consequence thereof, he was entitled to recover.    The dirt and rubbish, which formed the obstruction complained of, were not placed in the street at one time, according to defendant's testimony. These obstructions had been accumulating there from time to time for several weeks. The mere fact that dirt and other obstructions were permitted to remain in the street for three or four weeks would not make the city liable, unless the street was not reasonably safe on account thereof.    Yet, under this instruction, the defendant could be made responsible, if there was any dirt and obstructions in the street for three or four weeks, notwithstanding they may not have assumed such proportions, or, to use the language of the instruction, been "so piled" up in the street as to make the

same dangerous, until the very time of the accident. The rubbish was not placed in the street by the defendant, its officers or agents. It was the act of a third party. The liability of the city must be predicated, therefore, upon its negligence in not causing the removal thereof within a reasonable time after it had notice, or by the exercise of proper care and diligence might have known the condition of said street. [Carrington v. St. Louis, 89 Mo. 208; Bonine v. Richmond, 75 Mo. 437; Franke v. St. Louis, 110 Mo. 516.] Under this instruction there may have been dirt and obstructions in the street for three or four weeks, which in no manner rendered such street unsafe and were entirely harmless, and did not interfere with the passage along the same, yet if, at the time of the accident, they "were so piled up on said street" as to render it dangerous, plaintiff was entitled to a verdict. We do not think the question of the city's negligence was properly submitted to the jury in this instruction.

2.   The language of said instruction, upon the measure of damages, is also subject to criticism. It attempts to follow the rule announced by this court in Streett v. Laumier, 34 Mo. 469, and of the court of appeals in Hoffman v. Street Ry., 51 Mo. App. 273. It simply tells the jury, however, that if they find for the plaintiff, they will, in addition to the other items, mentioned therein, allow him "such sum as they believe from the evidence the said horse was damaged or injured." This furnished no rule by which such damages could be estimated or ascertained, nor did it give the elements that should enter into the computation. [Hawes v. K. C. Stock Yards Co., 103 Mo. 60.] As the case must be retried for other reasons, this instruction can be made to conform to the one which respondent claims it was intended to follow, and which was approved by this court in Streett v. Laumier, *supra.*

3.   The point made by defendant in the motion for a new trial, that the verdict is excessive seems, too, to be well

taken.   An examination of plaintiff's evidence, and the testimony offered by him in support of his case clearly shows that the aggregate of the items of damage testified to by him, and his witnesses is considerably less than the sum awarded him by the jury.

We think the case should be retried and it is accordingly remanded for that purpose.

All concur, except MARSHALL, J., who having been of counsel in the case, took no part in the decision.