ALICE MILLEDGE, Respondent, v. KANSAS CITY, Appellant.

Kansas City Court of Appeals, May 25, 1903.

1. **Pleading:** PERSONAL INJURY: SIDEWALK: ISSUE: NOTICE. The petition sounding in damages for a personal injury arising from a fall on a defective sidewalk is considered and held to present the issue whether the walk, as it then existed covered with earth reduced to mud by a recent rain, was the cause of the injury, and did the city have notice of its condition.

2. **Municipal Corporations:** MUD ON SIDEWALK: RAIN: NOTICE. Where a sidewalk is covered with dirt liable to be converted into slippery mud by rain it is a question for the jury whether at the time of the alleged injury the condition of the walk was not reasonably safe for persons passing over it with the exercise of ordinary care and whether the city had, or could by ordinary diligence have had, knowledge of its condition in time to have repaired.

3. **Instructions: PLEADING: PROOF: ASSUMPTION.** It would be error for an instruction to assume the condition of the walk was different from that shown by the evidence, and an instruction under review is held not to be subject to such criticism.

4. **Municipal Corporations: SLANTING SIDEWALK: PLEADING: NEGLIGENCE.** A city is not guilty of negligence in building its sidewalk slanting for the purpose of draining, but the greater such slope the greater the city's duty in keeping it free from slippery substances such as mud, ice, etc.

5. ————: **DIRT ON SIDEWALK: EXCESSIVE RAIN.** A contention that the plaintiff's injury resulted from the mud washed from the bank on the sidewalk by an excessive rain, of which the defendant city could have no notice, is held to be made on an assumption not in accordance with the facts; whether a municipal corporation should anticipate, as a matter of common knowledge, that streets situated as the one in question are liable to become unsafe because of mud carried on them by rains, is left undecided.

6. **Personal Injury: VERDICT: EXCESSIVE.** Plaintiff was seventy-three years of age, active, earning three hundred dollars a year and dependent on herself, and her expectancy was seven years. She fell on the sidewalk. The fibula was dislocated with some permanent disability and the pain incident to such an injury: *Held*, a verdict for three thousand dollars was not unreasonable or oppressive.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

AFFIRMED.

*R. J. Ingraham* and *J. J. Williams* for appellant.

(1) The verdict was excessive. The whole testimony as to the permanence of the injury was, that the fibula was dislocated. It was replaced by the physician, in whose opinion the injury will be permanent to some extent. Says she will never be able to entirely have the perfect use of that limb. On this guarded opinion the permanence of her injury was submitted by plaintiff's instruction No. 4, and the jury allowed her $3,000. Of this amount $100 was allowed for medical services, $75 for three months time lost from work, and $2,825 must have been for pain, anguish and physical suffering, based on future permanent incapacity and loss of earn-

ing power. (2) Plaintiff's instruction No. 1 is erroneous and misleading. It assumes she had no knowledge of the condition of the walk. In fact, before she got to the place where she fell she knew of the conditions which caused her fall. A traveler has no right to act upon a presumption which by looking he could ascertain is not correct. Culverson v. Maryville, 67 Mo. App. 343; Brannock v. Elmore, 114 Mo. 65; Nixon v. Railroad, 141 Mo. 439. (3) Plaintiff's instruction No. 6 is erroneous and misleading. The idea stated in it is that it is negligent for a city to maintain a sidewalk on which there is dirt and which has the customary slant, if that dirt was wet and so turned into slippery mud. It submits to the jury to determine whether the dangerous condition which is limited by the instruction to such times as the dirt was wet and slippery, had existed such a length of time as to charge the city with the duty of making it safe, etc., in which event the instruction declares that the city was liable. Whether the walk was reasonably safe for travel at any other time than when muddy, was not submitted to the jury. Badgeley v. St. Louis, 149 Mo. 134; Pierce v. Mitchell, 60 Mo. App. 191. (4) Plaintiff's case rests on the slant and the mud. The slant was a slight one. We contend that it should be declared a matter of law based on common knowledge, that the defendant is not negligent merely because it maintained a walk which slanted a quarter of an inch to the foot from the property line out toward the street, although it is true that when slippery one would be more apt to fall there than if it were level. Reno v. St. Joe, 70 S. W. 133.

*Brumback & Jenney* and *A. S. Van Valkenburgh* for respondent.

(1) The city's own instructions, in addition to those which also submitted the same theory as plaintiff's actually told the jury in so many words, that it was the

city's duty to remove this particular mud from this particular sidewalk, and that the jury could not find for the city if they found that the mud had lain there long enough to give the city notice of its presence and give it time to remove the mud before the accident, and the jury, under those instructions, having found the facts submitted against the city, it can not now complain that the facts would not authorize a recovery. Hopkins v. Modern Woodmen, 94 Mo. App. 409; Phelps v. Salisbury, 161 Mo. 1. (2) Granting, solely for argument's sake, that plaintiff must recover, if at all, because the city allowed the mud to accumulate and remain, and granting, solely for argument's sake, that the city can complain of its own instructions wherein it submitted that very issue, and granting for argument's sake, that the city is not bound, speaking generally, to clean its sidewalks, yet it is good law that, when an accumulation of deep, slippery mud on a particular sidewalk causes a dangerous situation, differing in its characteristics and danger from the general situation of other muddy sidewalks, and when the city has sufficient notice of the peculiar danger, then it is bound to prevent the accumulation of mud which makes the danger, and to remove the mud, if that prevention of accumulation or removal will make the sidewalk reasonably safe for travel. Reedy v. St. Louis, 161 Mo. 538 (a case so exactly like the case at bar as to be controlling authority); Walthmeyer v. Kansas City, 71 Mo. App. 354. (3) The damages are not excessive. They can be justified with more accuracy than is usually possible. The plaintiff has doctor's bill ($100), wages lost to date of filing petition ($75), wages lost from date of petition to date of trial ($325), expectancy of life from date of trial, proven 7.1 years, at $300 per year ($2,130), total, $2,630, leaving only $370 for pain, anguish and physical suffering, covering several months and still existing. If appellant thought the damage instruction misleading, it should have asked an instruction explaining or modifying it.

Browning v. Railroad, 124 Mo. 71; Matthews v. Railroad, 142 Mo. 664. (4) There is no error in instruction 1 for plaintiff. The instruction does not assume absence of knowledge. In fact the expression about absence of knowledge is put in as an extra protection for the city. Swanson v. Sedalia, 89 Mo. App. 121. (5) The city's complaint that the jury ought to have been instructed that it was not liable if the dirt which caused the injury washed down the day of the accident, is totally and ridiculously unfounded, because of its own instructions 4, 6 and 8, it had this very proposition laid before the jury much more strongly in its favor than it was entitled to have it. Reedy v. St. Louis, 161 Mo. 523 (a strong case on exact point where twenty-four hours notice was enough to go to jury).

BROADDUS, J.—The plaintiff, a woman seventy-three years of age, sued the city for damages for injuries sustained from a fall alleged to have been caused by the defective condition of defendant's sidewalk on the north side of Independence avenue near its intersection with Brighton avenue. The walk in question was made of plank, had existed for a long time, was so constructed that it slanted from the inside towards the street, and on, and a long time prior to, the 27th day of September, 1900—the date of plaintiff's injury—was covered with earth. The lot to the north of the sidewalk was an embankment from which earth washed down upon the walk in times of rain. On the day in question, at about six o'clock p. m., there had been a heavy fall of rain, shortly after which, while plaintiff was passing along over said walk, she came to a place slippery with mud. She walked into the mud a short distance, stopped, looked back, and concluded it was as safe to proceed as to retrace her steps, and in so doing both her feet slipped and she fell in the direction in which the walk sloped. According to her testimony on the trial, the walk was in a shaky condition at the time.

The evidence went to show that the injury sustained was the dislocation of the fibula of the left limb. The fibula was replaced and the injured member put in a plaster of paris cast, where it remained for over two weeks. Her physician gave it as his opinion that to some extent the injury would be permanent, and that she would never have perfect use of that limb. Plaintiff testified in her own behalf that she suffered much pain from the injury and has since continued to so suffer, but not so severely as formerly; that her limb "gets very sore and stiff;" that she can not "lift it off the floor at all," if she stands on it too long; and that she has "to drag it" after her. The evidence showed that since the age of fourteen years plaintiff had followed an active and laborious life, and that at and prior to her injury her earnings amounted to $300 a year. She was a widow dependent upon her own labor for support. Her expectancy of life was 7.1 years.

The defense was a general denial. The jury returned a verdict for plaintiff for $3,000 and defendant appealed.

As the parties differ somewhat in their construction of the petition, it becomes necessary at the start to define its scope. It is alleged that the sidewalk was "composed of wood, and was old, shaky and uneven, and tilted from a horizontal position;" that it "was covered with a coating of dirt, which lay upon said sidewalk to such a depth, that when it rained, said dirt was converted into a slippery mud, as it then lay upon said sidewalk [which] made it dangerous to walk thereupon, because a person so walking thereupon would be liable, without fault on his part, to fall," etc. An after-allegation is, that plaintiff's fall was occasioned by the slippery and unsafe condition of the walk. It is nowhere alleged that her fall was occasioned by its old or shaky condition; and there was no evidence tending to show that such a condition was responsible for her injury. As we view the pleadings, the issue was whether the side-

walk as it then existed, covered with earth reduced to mud by the recent rain, was the cause of plaintiff's injury? And if so, did defendant have notice of such condition, and was it so maintained and of such a character as to render defendant liable in damages for the injury thereby inflicted?

It is one of defendant's contentions that the slippery and dangerous condition of the walk that caused plaintiff's injury was brought about by the rain which had just ceased when plaintiff fell, of which defendant could not have had notice in time to have rendered it safe so as to have avoided such injury. If the earth saturated with water and thereby converted into mud had been carried upon the sidewalk by the rain just fallen, the contention would have some force; but as the city had maintained the walk continuously covered with earth liable to be converted into slippery mud by rains that might occur at any time, it seems that in so doing it was guilty of negligence. It would have been the duty of a prudent person under the circumstances in the exercise of ordinary care to have anticipated the danger and removed the cause. And there can be no difference upon principle in a question of diligence in requiring a city to remove from its sidewalks snow and ice, than a similar duty with reference to mud which may accumulate upon such walks to such an extent as to render them unsafe and dangerous to passengers. It was therefore a question for the jury whether the sidewalk was, in its condition at the time, not reasonably safe for the use of persons passing over it while in the exercise of ordinary care; and whether such condition had existed for such a length of time for the defendant, in the exercise of ordinary diligence, to have ascertained and removed the earth.

The case, although somewhat similar to that of Badgley v. St. Louis, 149 Mo. 122, presents a different question. There the jury were told that, "if at the time of the accident to plaintiff's horse, dirt and rubbish had

been so piled upon a street by others as to render it dangerous, plaintiff was entitled to recover damages against the city," which instruction was held by the Supreme Court to be error because the city's liability would depend upon its negligence in not causing the removal of such obstruction within a reasonable time after it had notice of the condition of the street, or by the exercise of proper care and diligence might have known thereof. It was also held that "the mere fact that dirt and other obstructions were permitted to remain in the street for three or four weeks would not make the city liable, unless the street was not reasonably safe on account thereof. Yet, under this instruction, the defendant could be made responsible, if there was any dirt and obstructions in the street for three or four weeks; notwithstanding they may not have assumed such proportions . . . as to make the same dangerous, until the very time of the accident." The facts here, however, are different. It was not the quantity of earth that caused the danger; it was its condition caused by its becoming saturated with rain, which every reasonable person was bound to anticipate; and the instructions required that plaintiff should prove its bad condition existed for a sufficient length of time before the injury for the city to have ascertained and removed the obstruction.

Defendant's objection to instruction number one given for plaintiff, because it assumes that the condition of the walk was different from that she stated it to have been, is not borne out by the language of the instruction itself. Such an assumption would, of course, be absurd if indulged in, but as it was not, the objection has no force.

The defendant contends that plaintiff based her right to recover on the ground that the walk was slanting and muddy. This is true in the main. It is therefore insisted that as the slant in the walk was in ordinary use and was necessary for drainage purposes—which may

be conceded — that it should therefore be declared, as a matter of law, that the defendant was not negligent in maintaining the sidewalk in question with such slant. It must be admitted that the fact of the slope in the walk was not an element of negligence; but at the same time it must be considered in connection with the plaintiff's case, for she was more liable to have fallen on a sloping walk covered with slippery mud than on one that was level. That fact would only tend to enhance defendant's duty to the traveling public. The greater the slope in the defendant's sidewalk, the greater the corresponding duty upon defendant.

Counsel for the defendant further urge: ''If the court should go to the extent of holding that mud upon a sidewalk is governed by the same law as snow and ice upon a sidewalk, still, the demurrer to the evidence in the case should have been sustained, because of the undisputed fact that an excessive rain, which had just ceased, had washed down [mud] from off the embankment onto the sidewalk where plaintiff fell, so the slippery condition of the walk at the time of plaintiff's falling was caused by natural conditions, which can not be claimed that the city had time to learn of and remove before the accident in question.'' This assertion is made upon an assumption that is not in accordance with the fact, which was that the defendant had permitted the earth to continuously remain on the walk for months prior to the accident, and that the recent rain did not produce but only exaggerated the condition. It is not necessary, because not strictly in the case, for us to determine whether or not it is a part of defendant's duty which it owes to the public passing over its streets to anticipate, as a matter of common knowledge, that streets situated as is the one in question are liable to become unsafe because of mud carried upon them by rains, and we decline to do so; for which reason we will not notice some of the arguments offered.

It is contended also that the verdict is excessive.

As plaintiff's expectancy of life at the time of the accident was seven years, her earning capacity alone, in round numbers, would amount to $2,100, as she was earning at the rate of $300 each year; but as it is not probable that her capacity for labor would continue unimpaired as time advanced it would scarcely be reasonable to credit her with that amount for the future had she suffered no injury. In estimating her damages, however, we must take into consideration also the pain already suffered, and that which she must continue to endure for the future. ''It is difficult to measure in dollars the value of the free use of a limb, either in the young or aged, and harder still to place a money value for pain inflicted by the wrongdoer. All the courts can do is to see that the damages awarded in such case are not unreasonable and oppressive.'' Baker v. City of Independence, 93 Mo. App. 165; Porter v. Railroad, 71 Mo. 66. We do not think that under the circumstances the verdict was the result of passion or prejudice on the part of the jury, or that it is unreasonable or oppressive.

For the reasons given the cause is affirmed. All concur.