CITY OF ST. LOUIS v. LANG *et al.*, *Appellants.*

Division Two, December 3, 1895.

1. **City:** CHANGING STREET GRADE: PETITION: ORDINANCE: JUDICIAL NOTICE. Where a city charter provides that no street grading can be ordered except by ordinance and all courts are required by the state constitution and the city charter to take judicial notice of the provisions of the latter, a petition in a proceeding under Revised Statutes, 1889, sections 1815-1821, to assess damages and benefits for change of street grade which alleges that a certain ordinance defining the limits within which private property had been or would be benefited by the grading of the street was "duly enacted" inferentially states the passage of an ordinance for the grading of the street and is a defective statement of a cause of action and not a statement of a defective cause of action; such petition is good as against a general demurrer or a motion in arrest of judgment.

2. ———: ———: ———: ———: PRESUMPTION. Where the authorities of a city, in the usual course of business, would first have to pass an ordinance to grade a street, as a condition precedent to the passage of an ordinance defining the limits within which private property has been or will be benefited by such grading, an allegation of the passage of the latter ordinance will afford presumptive proof of the passage of the requisite and prior ordinance.

3. ———: ———: PRACTICE: CONSENT OF PROPERTY OWNER. A city may, under the provisions of section 1815, Revised Statutes, 1889 institute a proceeding to assess the damages and benefits caused by changing the grade of a street without the consent of the owner of the property.

4. ———: ———: BENEFITS: DAMAGES: REPORT OF COMMISSIONERS: EXCEPTIONS. Under Revised Statutes, 1889, section 1818, providing that the report of commissioners to assess damages and benefits for changing the grade of a street may be reviewed by the court on written exceptions filed in the clerk's office within ten days after the filing of the report, exceptions filed after the lapse of the ten days are properly stricken out on motion.

5. ———: ———: PROCEDURE: ANSWER. Defendants have the right to file an answer in a proceeding under section 1815, Revised Statutes, 1889, to assess damages and benefits for change of street grade (R. S., sec. 2042), but the answer must be seasonably filed, and where leave to file it is not asked until after expiration of the time to file exceptions to the report of the commissioners, it is properly refused.

6. ——: ——: ——: ——: JUDGMENT BY DEFAULT. Judgment by default may be taken in a proceeding under Revised Statutes, 1889, sections 1815–1821, to assess damages and benefits for change of street grade, where an answer is not filed in due time, the same as in other cases.

7. ——: ——: CONSTITUTION. Where an ordinance providing for change of street grade was passed before the adoption of the constitution of 1875, but the constitution went into operation before any action was taken to carry the ordinance into effect, the provisions of such constitution with reference to the assessment of damages will control.

*Appeal from St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*Broadhead & Hezel* for appellants.

(1) In these statutory and summary proceedings courts of general jurisdiction stand upon the same footing as those tribunals whose jurisdiction is special and limited. *Ellis v. Railroad,* 51 Mo. 200; *Moses v. Dock Co.,* 84 Mo. 245; *Lind v. Clements,* 44 Mo. 540; *Leslie v. St. Louis,* 47 Mo. 474; *Anderson v. Pendleton,* 89 Mo. 61; *State ex rel. v. Field,* 107 Mo. 445. (2) The utmost strictness is required in order to give validity to these proceedings, and unless upon the face of the proceeding had, it affirmatively appears that every essential prerequisite of the statute conferring the authority has been fully complied with, every step from inception to termination will be *coram non judice.* Dillon on Mun. Corp. [4 Ed.], sec. 605, and note to sec. 604, p. 707; *Ellis v. Railroad, supra; Moses v. Dock Co., supra; Anderson v. Pendleton, supra; State ex rel. v. Field, supra.* (3) The petition in this case is clearly insufficient to confer jurisdiction. It fails to show that the "proper authorities" have graded or regraded or have authorized the grading, etc., of Hickory

street.    It also fails to show that the proper authorities ever made any attempt to agree with the owners of the property in regard to the proper compensation therefor, or that they failed to so agree after reasonable effort to effect an agreement.    Dillon on Mun. Corp. [4 Ed.], sec. 605, and note 1 to 604, p. 707; *Lind v. Clements, supra; Leslie v. St. Louis, supra; Anderson v. St. Louis,* 47 Mo. 479; *Anderson v. Pendleton, supra.*    (4) The circuit court erred in taking the averments of the petition as confessed and in refusing to require affirmative proof of the jurisdictional facts necessary to entitle plaintiff to a judgment or decree therein, and in entering its judgment herein without any affirmative proof whatever in respect to said jurisdictional facts.    (5) The court erred in striking out the exceptions of certain defendants, and also erred in refusing said defendants leave to file their answer.    (6) The owners of property damaged are not entitled to compensation for any damage suffered by reason of change of grade or grading done prior to November 30, 1875, the date on which the present constitution went into effect.    *Schaltner v. Kan. City,* 53 Mo. 162; *Wegeman v. Jefferson City,* 61 Mo. 55.

*W. C. Marshall* for respondent.

(1) The circuit court had full jurisdiction and all necessary jurisdictional facts were stated in the petition.    R. S. 1889, secs. 1815–1821, inclusive.    (2) The exceptions filed by appellants, being out of time, were properly overruled.    The report of the commissioners was filed on February 17, 1893, and the exceptions were not filed until March 10, 1893, which was twenty-one days after the filing of the report, or eleven days after the expiration of the ten days allowed by section 1818, Revised Statutes, 1889, for filing exceptions,

and hence the court had no jurisdiction to entertain the same, and acted properly in striking out the exceptions. (3) No act having been done by the city changing the physical condition of Hickory street prior to November 30, 1875, the owners of property affected by the proposed work of grading, are entitled to damages, and the persons owning property that will be benefited by such change are properly assessable with benefits.

SHERWOOD, J.—On March 18, 1892, the plaintiff city instituted this proceeding, under sections 1815 to 1821, inclusive, Revised Statutes, 1889, to assess the damages and benefits caused by changing the grade of Hickory street between Mississippi and Armstrong avenues.

Prior to that, the city, on the eighteenth of January, 1875, by ordinance number 9295, entitled, "an ordinance to establish the grade of Hickory street between Mississippi avenue and Armstrong avenue," fixed the grade by establishing the same at a point two hundred and forty-five feet west of the west line of Mississippi avenue, at an elevation of eighty feet above the city directrix. Subsequently thereto, to wit, on October 31, 1891, the city passed an ordinance number 16454, whereby were defined the limits within which private property would be benefited by the grading of Hickory street, as aforesaid.

Upon institution of this proceeding all persons who would suffer damages, and all persons within the benefit district, whose property would be benefited, were made parties defendant, and properly brought into court. Thereafter, such steps were taken, in conformity with law, as resulted in the filing of a report, by properly appointed commissioners. More than ten days after the filing of this report defendants filed exceptions to the report, which exceptions were stricken

out on motion of plaintiff, because not filed in time, as required by section 1818, Revised Statutes, 1889. Thereupon, defendants asked leave to file an answer, but the court refused to grant such leave. Subsequent to this, the trial court approved and confirmed the report of the commissioners, and because of the failure of defendants, within the time allowed by law, to file any answer to the petition, or any exceptions to the report of the commissioners, the averments of the petition were, by the lower court, taken as confessed, and judgment entered accordingly.

The petition, after appropriate reference to section 9295, establishing the grade of Hickory street, as heretofore stated, proceeds thus:

"That thereafter, to wit, on the thirty-first day of October, 1891, there went into force and effect an ordinance of said city of St. Louis, duly enacted by the municipal assembly thereof, upon the unanimous recommendation of the board of public improvements, in writing, and approved by the mayor of St. Louis, an ordinance to define the limits within which private property has been, or will be, benefited by the grading of Hickory street between Mississippi avenue and Armstrong avenue, which ordinance is numbered 16454, and is in words and figures following, to wit:

"'(16454).

"'An ordinance to define the limits within which private property has been, or will be, benefited by the grading of Hickory street between Mississippi avenue and Armstrong avenue.

"'Be it ordained by the municipal assembly of the city of St. Louis as follows:

"'Section 1. The real estate situated within the following boundaries is hereby declared to have been, or to be, benefited by the grading of Hickory street

between Mississippi avenue and Armstrong avenue, to the grade established by ordinance. nine thousand, two hundred and ninety-five, approved January eighteenth, eighteen hundred and seventy-five, to wit:' etc.

"Plaintiff further states that it is necessary to grade Hickory street between Mississippi and Armstrong avenues, to conform to the grade established by the ordinance aforesaid, and for .the purpose of constructing and improving said street; that the owners of the property affected by said improvement have refused to consent thereto, and that plaintiff is unable to agree with said owners, for the proper compensation for the damages done, or likely to be done, or sustained, by reason of such improvement, and that by reason of the legal incapacity of the minor defendants herein, such compensation can not be agreed upon.

"Plaintiff further states that the general nature of the work of improvement aforesaid is to conform the grade of said Hickory street between said Mississippi avenue and Armstrong avenue to the other portions of Hickory street, and in so doing to fill in some places and to cut down in other places, thereby changing the natural condition of the land.

"Plaintiff further states that the defendants above named are in actual possession of the premises to be affected either by being damaged or by being benefited, or have a title to said premises appearing of record and lying within the benefit district established by said ordinance number 16454."

The sections of the statute already referred to, which control this cause, are as follows:

Section 1815 provides that: "In all cases where the proper authorities in any city in this state have graded or regraded, or may hereafter grade, or change the grade or lines of any street or alley, or in any way

alter or enlarge the same, or construct any public improvement, thereby causing damage to private property for public use, within the meaning of section 21 of article 11 of the state constitution, without the consent of the owner of such property, or in case they fail to agree with the owner thereof, for the proper compensation for the damages so done, or likely to be done, or sustained by reason thereof, or if by reason of the legal incapacity of such owner no such compensation can be agreed upon, the circuit court having jurisdiction over the territory embraced in such city, or any judge thereof in vacation, on application by petition, either by the city authorities or the owner of the property for which damage is claimed or anyone on behalf of either,'' is authorized to appoint commissioners to assess the damages and benefits.

This section further provides that: ''The petition shall set forth the general nature of the work, or improvement, causing damage to private property for public use as aforesaid, together with all the facts necessary to give the court jurisdiction in the premises, the names of the owners of the several lots or parcels of land to be affected thereby, if known, or, if unknown, a correct description of the parcels whose owners are unknown.'' It is further provided in said section, that upon the filing of such petition a summons shall issue, etc. It further requires that before the city institutes a proceeding under this act, it shall, by ordinance, define the limits within which private property is benefited by the change.

Sections 1816 and 1817 relate to the method of assessing damages and benefits and to the report of the commissioners.

Section 1818 provides that: ''The report of the commissioners may be reviewed by the circuit court on written exceptions, filed by any party in the clerk's

office within ten days after the filing of such report, and the court shall make such order therein as right and justice may require, and may order a new appraisement on good cause shown, but the hearing of such exceptions shall be summary, and the court shall fix a day therefor without delay. And any party shall be entitled to have the damages assessed by a trial by jury as at common law, upon claiming the right in the exceptions to the report of the commissioners.''

Section 1821 provides as follows: ''In all cases where the city authorities have graded or regraded or changed the grades or lines of any street or alley, or may hereafter grade or change the grade or line of any street or alley, without the consent of the owner, or where the compensation can not be agreed upon, and do not, before the commencement of the work, institute proceedings, or have not instituted proceedings, to have the damages ascertained and assessed, as provided in the six preceding sections, the owner shall be entitled to an action at law against the city, town, or village to ascertain and recover the amount of damages caused by such improvement.''

1.    It is insisted on behalf of defendants that the lower court acquired no jurisdiction in the premises because of the fact that the petition fails to set forth the passage of ordinance 14900, approved March 26, 1889, authorizing Hickory street from present western terminus to be partially graded, and made provision for the cost of such improvement.

It certainly would have made the point of jurisdiction, or rather of the validity of the petition, much easier of solution, had the ordinance last mentioned been pleaded, but the question here presented is, is the petition sufficient without that course being pursued; in other words, is the passage of such an ordinance a condition precedent to the institution of the proceeding

at bar, and of consequence the statement of such passage a necessary ingredient in the make-up of a petition in a case of this sort? Assuming for argument's sake that it is, let us look at the situation presented by this record, together with such questions as naturally present themselves for consideration in connection therewith, to wit:

The constitution of this state, article 9, section 21, requires that we take judicial notice of the charter of the city of St. Louis, and a like requirement is made in the charter itself. Looking, then, to the charter, we find that the only power the city authorities have as to the grading of streets, is that which must be expressed in the form of an *ordinance*. Charter, art. 3, sec. 26, and art. 5, sec. 14. Looking, then, to the petition, we find that it makes a direct statement that ordinance 16454 had been "duly enacted" and that it was an ordinance to define the limits within which private property had been or would be benefited by the grading of Hickory street between Mississippi avenue and Armstrong avenue. And on looking to the caption, as well as to the first section of that ordinance, we find similar declarations made as to the *grading* of *Hickory street* between the points aforesaid.

So that, taking, as we must, judicial notice of the charter provisions that no grading of a street, or improvement, can be ordered to be made which involves the expenditure of money except by *ordinance*, it must needs follow that the statements of the petition inferentially and by implication, at least, announce the passage of an ordinance for the grading of Hickory street. So that, conceding defendant's position to be correct, we should regard the statement made in the petition, and be fully justified in so doing, as but a defective statement of a cause of action, and not the statement of a defective cause of action, and that as it would be

City of St. Louis v. Lang.

good against a general demurrer, so, also, will it be good against a motion in arrest. *Aurora Water Co. v. City of Aurora*, 129 Mo. 540.

Another suggestion occurs in support of the view just presented. If the authorities of the city in the usual course of business would first have to pass an ordinance to grade Hickory street, as a condition precedent to the passage of an ordinance of the nature of ordinance 16454, then the passage of the latter ordinance being alleged, affords presumptive proof of the passage of the requisite and prior ordinance, and this upon the principle which finds illustration in the maxim: "*Probatis extremis, prae sumuntur media.*" 1 Greenl. on Evidence [14 Ed.], sec. 20, and cases cited.

2. Under the provisions of section 1815, the city is permitted to institute such proceedings as the present "without the consent of the owner of such property." But were this otherwise, the petition is sufficiently full in its statements showing utter inability to agree with the defendant owners as to the compensation which should be paid for the property in question as well as sufficiently full regarding other statements. And it is to be here noted that there exists a marked distinction between section 1815, and certain statutory provisions which came under discussion in *Anderson's case*, 47 Mo. 479, and other cases similar thereto.

3. The exceptions filed by defendants out of time were properly stricken out on motion of plaintiff because of such failure. Section 1818.

4. For analogous reasons the refusal of the court to permit defendants to file an answer was correct. It was offered out of time. There is no doubt that a right exists in a case of this kind to file an answer. Section 2042, Revised Statutes, 1889, contemplates that "every defendant summoned or notified according

to law," no matter what the form of action or method of procedure, shall have the right "to demur to or answer the petition." This right of traversing the allegations of the petition in instances like the one before us is recognized elsewhere. Lewis, Em. Dom., sec. 304.

The necessity for promptitude in filing exceptions or an answer in cases of this sort, becomes apparent when the provisions of section 8 of the charter are considered, which require the city to pay all costs of such proceedings, including the filing of the report of the commissioners.

5. As a corollary of the right to file an answer herein, springs into being the right to take judgment by default in case no answer be filed. And we see no reason to distinguish this proceeding from any other as to the force and effect of a judgment when taken for want of answer; we hold there is none.

6. Relative to the contention of defendants, that "the owners of property damaged are not entitled to compensation for any damage suffered by reason of change of grade or grading done prior to November 30, 1875, the date when the present constitution went into effect," it suffices to say that the mere passage of an ordinance establishing the grade of a street in 1875 would certainly not be calculated to work very much hurt, until attempted to be put in operation. *Moore v. City*, 103 Mo. *loc. cit.* 475.

But, if put into operation after our present organic law took effect, the same rule respecting damages to be assessed would be applied as if ordinance 9295 had been passed at a date postdating November 30, 1875.

Nor do we see any reason to doubt that the ordinance had the intended effect to establish the grade as therein declared, not only at the point indicated, but the entire distance between the two avenues. If not,

it was certainly very singular that it should have been passed. But if it did indeed establish the grade on Hickory street between the two avenues, then it would seem to follow that there was no necessity to advert in the petition to the passage of any other ordinance. And this we regard as the result of the passage of that ordinance.

A bit of history hereto subjoined, and some observations pertinent thereto, kindly furnished by my brother BARCLAY, a native St. Louisan, afford apt illustration of the significance, force, and precise effect of the terms employed in ordinance 9295.

"The 'city directrix' is a well known standard for the determination of elevations in St. Louis. According to local historical authority, it was fixed on a level with the highest point of the flood of 1826, when the Mississippi river rose to an unusual, and, until then, unprecedented limit. To mark that point Rene Paul, then city engineer, under authority of the council, erected a stone monument near the southwest corner of the Levee and Market street. The top of that monument is even with the line of the flood of 1826. It was adopted, and still remains, as the base line for the measurement of all elevations required in municipal work. The grades of streets and other thoroughfares are usually fixed by relation to the city directrix. It is often sufficient, in locating the grade of a new street or part of a street, to fix one point in it with reference to the directrix, when the new street, at its beginning and end, intersects other highways of already established grades. The ascertainment of the grading lines throughout the new street is then a mere matter of mathematical engineering.

"The original monument erected by Paul remained in place until about 1890, when it was removed during the construction of one of the railways on the levee;

but its elevation has been transferred to permanent structures in various parts of the city, and still remains the standard of municipal levels."

Finding no error in the record, judgment affirmed. All concur.