THE STATE ex rel. KANSAS CITY v. O. A. LUCAS, Judge of Circuit
Court.—296 S. W. 781.

Court en Banc, May 31, 1927.

1. **CITIES: Special Charter Provisions: Priority over General Statutes:
Condemnation.** Provisions relating to the condemnation of lands for street
purposes, incorporated in the special charter framed and adopted by a

city of one hundred thousand inhabitants, when not inimical to the general scope of the policy of the Constitution and laws, govern in purely municipal matters as against the provisions of the general law.

2. **CITIES: Special Charter Provisions: Priority over General Statutes: Basis for Preeminence.** The preeminence of provisions of the charter of Kansas City over general statutes does not depend upon acts of the General Assembly, but rests fundamentally upon the grant to the city of power to frame a charter contained in the Constitution (Sec. 16, Art. 9), whereby cities of over one hundred thousand inhabitants are vested with power to frame and adopt charters "consistent with and subject to the Constitution and laws of this State."

3. ———: ———: ———: **Constitutional Amendment of 1920: Immaterial Alteration.** Amended Section 16 of Article 9 of the Constitution, adopted in 1920, authorized a city having one hundred thousand inhabitants to frame and adopt a charter for its own government "consistent with and subject to the Constitution and laws of this State," but omitted the words "but such charter shall always be in harmony with and subject to the Constitution and laws of this State" found in old Section 16 by it repealed. **Held,** that, as the words "consistent with and subject to the Constitution and laws of this State" are found in both the amended and repealed section, the omission is immaterial in a consideration of the question whether a clause in the charter or the general statutes are controlling in the matter of the designation of a newspaper in which are to be published legal notices pertaining to the condemnation of land for street purposes.

4. ———: ———: ———: **Designation of Newspaper: Conflict with General Statutes.** The designation of a newspaper in which are to be published orders and legal notices pertaining to the condemnation of lands for street purposes is but an incident of the condemnation proceeding, and the procedure prescribed by a special city charter, framed under a constitutional grant of power to the city, is a matter pertaining to local municipal government, as contradistinguished from matters belonging to the domain of general state control, and comes within the purview of the requirement that the charter shall be "consistent with and subject to the Constitution and laws of this State," and provisions in the charter regulating the designation of a newspaper for "doing the city printing" are not nugatory, but are that far controlling, and such charter provisions and ordinance enacted in harmony therewith are not at variance with the Act of 1923 (Laws 1923, pp. 324, 325).

5. **CITY PRINTING: Contract: Made by Director of Public Works.** Since the ordinance, enacted in accordance with the new charter of Kansas City, declares that "the Director of Public Works is hereby declared to be the successor of the Board of Public Works and the members thereof" and "he does hereby succeed to the duties of said Board of Public Works and the members thereof," the Director of Public Works took the place of said Board of Public Works on the Board of Awards, and a contract with a publisher for doing the city printing, signed by him and the other members of the Board of Awards, is a contract authorized by the charter and ordinances.

6. ———: ———: **Expiration.** Under an ordinance declaring that a contract for doing the city printing "shall terminate on the first day of July of each year, or as soon thereafter as the contract for the ensuing year shall become in force," a contract with a publisher, made on June 11, 1926, "for a period ending July 1, 1926, and until a new contract is made therefor," did not expire on July 1st, but was in force on July 16, 1926, when an order

of publication was made, no other contract for the ensuing year having been made.

---

Corpus Juris-Cyc. References: **Eminent Domain,** 20 C. J., Section 307, p. 879, n. 72; Section 349, p. 939, n. 31. **Municipal Corporations,** 43 C. J., Section 153, p. 167, n. 32. **Newspapers,** 29 Cyc., p. 700, n. 53; p. 701, n. 68.

## Prohibition.

PRELIMINARY RULE MADE PERMANENT.

*John T. Barker* and *J. C. Petherbridge* for relator.

(1) The charter of Kansas City provides that the order of publication and notice to the property owners, in city condemnation proceedings, shall be published in the newspaper in Kansas City at the time doing the city printing under a contract with the city therefor. Sec. 134, Charter of Kansas City (1925). (2) The "Kansas City Daily Democrat" was and is now the newspaper in Kansas City under contract with the city to do its printing, and not the "Daily Record." Therefore, the order of respondent directing that the order of publication be published in the Daily Record was and is erroneous and void, and confers no jurisdiction on respondent as judge of the circuit court to hear, try and determine the proceedings pending in his court. In re Land v. Boruff, 295 Mo. 28, 46. (3) The condemnation of private property for public use by Kansas City is purely a local matter governed by its charter provisions relating thereto. In re Land v. Boruff, 295 Mo. 28, 46. (4) The charter provisions of Kansas City relating to city condemnation proceedings do not conflict with the statutes of this State. State ex rel. v. Seehorn, 246 Mo. 557. (5) In all purely local municipal matters the provisions of the Kansas City charter govern and control over a state statute. Kansas City v. Marsh Oil Co., 140 Mo. 458; Brunn v. Kansas City, 216 Mo. 108, 117; State ex rel. v. Field, 99 Mo. 352; Kansas City v. Scarritt, 127 Mo. 642; Stanton v. Thompson, 234 Mo. 11; Kansas City v. Field, 270 Mo. 513; State ex rel. v. Seehorn, 246 Mo. 557; Ex parte Smith, 231 Mo. 122; State ex rel. v. Telephone Co., 189 Mo. 99; Attorney-General v. Detroit, 196 N. W. 392; 2 McQuillin's Municipal Corporations, sec. 841, p. 1799; 1 Dillon's Municipal Corporations (5 Ed.) sec. 63, p. 116; Fruin-Bambrick Const. Co. v. Shovel Co., 211 Mo. 524; St. Louis v. DeLassus, 205 Mo. 584; 7 McQuillin's Supplement, secs. 840, 841, p. 7019; 28 Cyc. 286.

. *Frank W. McAllister, L. E. Durham, Henry S. Conrad* and *Hale Houts* for respondent.

(1) It is not within the power of Kansas City to provide for publication in a newspaper other than that provided for by statute. The Laws of 1923 are controlling and the newspaper designated in pursuance thereof is the only paper in which a valid order of publication can be made. (a) The powers of the city under a special charter were controlled by Secs. 16 and 17, Art. IX, of the Constitution. By these sections Kansas City was authorized to adopt a charter for its "own government, consistent with and subject to the Constitution and laws of this State," with the further provision: "But such charter shall always be in harmony with and subject to the Constitution and laws of the State." This constitutional provision and the old charter in force at the time of the passing of the ordinance were still in force when the Act of 1923 was passed. By this Act three old sections of the statutes were repealed and new ones enacted, Secs. 10405, 10406, 10407, Laws 1923. Under the express provisions of the Constitution the ordinance was invalid as authorizing the designation of a paper in which the order of publication in question may be published, contrary to, and out of harmony with the Act of 1923. (b) Sections 16 and 17, Article IX, of the Constitution have been superseded by the new sections adopted by the amendments of 1920, Laws 1921, pp. 701 to 703. New Section 16 authorizes cities of the class of Kansas City to adopt a charter for their "own government, consistent with, and subject to the Constitution and laws of the State." But it does not contain the language of the old Section 16 "but such charter shall always be in harmony with, and subject to the Constitution and laws of the State." The present charter of Kansas City was adopted under the new constitutional provision. The omission of the language quoted from the new Section 16 does not in any way enlarge the power of Kansas City, but under no view has Kansas City the power to designate a newspaper for the publication in question other than a newspaper designated pursuant to the Acts of 1923. All charter provisions, ordinances and acts of officials attempting to so designate a paper for publication are invalid and beyond the power of the city. (c) The Constitution does not delegate any power to adopt a charter which shall provide for anything other than the city's "own government." Nor could the Constitution validly do so. A city can be granted no sovereign power by the State. It can be granted only the power to make laws for and regulate its own business. Municipal Corporations, 19 R. C. L. Sec. 54. The designation of a newspaper for the publication of the order of publication in question is not a matter pertaining to "municipal affairs,"

but is one within the jurisdiction of the State. 19 R. C. L. 750, 751. (d)  This court, in State ex rel. v. Field, 99 Mo. 352; Kansas City v. Scarritt, 127 Mo. 642.; Kansas City v. Marsh Oil Co., 140 Mo. 458; Brunn v. Kansas City, 216 Mo. 119, and State ex rel. v. Seehorn, 246 Mo. 557, in approving various charter provisions in respect to condemnation cases, was influenced either wholly or in part by the provision of the Enabling Act, Laws 1887, p. 42.  In none of the cases was presented a real conflict between charter provisions and State law.  The Act of 1923 repealed the Act of 1887 and enacted three new ones.  By Section 10406 a large discretion was placed in the circuit judges, and by Section 10405 it was provided that the newspaper should be one ''of general circulation therein (in the city) and published for at least one year.''  The one year provision has been construed by this court to refer to the length of time the newspaper has been in existence and published, rather than to the duration of any particular publication.  State ex rel. v. Schmoll, 282 S. W. 702.  (e) The old law, in so far as it affected publications in Kansas City, related only to the rates of publication and constituted a safeguard to the public, only in respect to this matter; whereas, the new law announces the policy of this State that in cities of over one hundred thousand inhabitants no order of publication can be validly published in any paper not one of general circulation and not having been previously published in the city for one year.  (2) There was no award or contract by the city in compliance with the ordinance of 1910.  (3)  If there was a contract, it has expired by limitation.

ATWOOD, J.—This is an original proceeding by prohibition to restrain respondent as Judge of Division Number Two of the Circuit Court of Jackson County, Missouri, from hearing and determining a condemnation suit instituted before him by Kansas City, Missouri, to condemn land under the provisions of its new charter for the purpose of widening Locust Street from Gillham Road to 27th Street in Kansas City.  Respondent filed answer and return, waived service of notice and copy of petition and suggestions in support thereof, and waived time and consented that the preliminary rule issue.  Relator filed reply, and from all the pleadings in the case we understand the conceded facts and issues joined to be as follows:

Respondent having directed that the order of publication and notice to the property owners affected by this condemnation proceeding be published in the Daily Record, a newspaper published in Kansas City, Missouri, but having no contract with the city to do the city printing, it is the position of relator that such publication of the order and notice does not give respondent jurisdiction of the parties

interested in said proceeding, and that the same should have been printed and published in the Kansas City Daily Democrat which was the newspaper in Kansas City, Missouri, at the time doing the city printing, citing Section 134 of the new Charter of Kansas City relating to such matters, as follows:

"*Publication of order.* A copy of such order shall be published in the newspaper in Kansas City, Missouri, at the time doing the city printing (if there be such, and if there be no existing contract with any newspaper for such city printing, then in any daily newspaper published in the city), on each day of issue of such newspaper for ten days, the last insertion to be not more than one week prior to the day set for said hearing."

The Daily Record is a newspaper which has been published in Kansas City for a number of years and was designated by the judges of the Circuit Court of Jackson County, under the provisions of the Laws of 1923, pages 324 and 325, being three new sections taking the place of repealed Sections 10405, 10406 and 10407, Revised Statutes 1919, as a newspaper in which public notices and advertisements directed by any court, or required by law to be published in cities of 100,000 inhabitants or more, should be published.

At the time the publication in question was ordered a newspaper referred to in relator's petition as the Kansas City Daily Democrat and in respondent's return as the Missouri Democrat had been published as a weekly newspaper by James T. Bradshaw for more than one year, but the Kansas City Daily Democrat had been published by him as a daily newspaper in Kansas City much less than a year. On June 11, 1926, there was executed by James T. Bradshaw, doing business as The Kansas City, Missouri, Daily Democrat, and Kansas City, by W. J. Teffey, Commissioner of Purchases and Sales of Kansas City, what purported to be a contract providing that the city printing should be done in the Kansas City Daily Democrat "for a period ending July 1, 1926, and until a new contract is made therefor."

Relator contends that said purported contract was entered into pursuant to an award made by a board consisting of the Commissioner of Purchases and Supplies, the Director of Public Works, and the City Counsellor under a certain ordinance of Kansas City, No. 5180, approved May 23, 1910, said ordinance providing:

"That all printing required by the City Charter, or any ordinance, to be done by the newspaper doing the city printing, and all printing, to be done under and in pursuance of any ordinance of Kansas City, shall be done under yearly contract for the same, to be made by the purchasing agent of the city on behalf of the city, in the manner hereinafter provided. Every such contract shall terminate on the

first day of July of each year, or as soon thereafter as the contract for the ensuing year shall become in force. . . ."

Said ordinance further provided that all such contracts should be made upon an award made by "the members of the Board of Public Works, the City Counsellor and the City Purchasing Agent" sitting as a "Board of Award."

It is further contended by relator that this ordinance remained in force under the present charter of Kansas City adopted in February, 1925, by reason of Section 456 thereof, as follows:

"All ordinances, regulations and resolutions in force at the time this charter takes effect, and not inconsistent with provisions of this charter, shall remain and be in force until altered, modified or repealed by or under authority of this charter or ordinance."

It is a further contention of relator that the Director of Public Works took the place of the members of the Board of Public Works under said ordinance for the purpose of making the award by reason of the fact that under the new charter the functions and duties generally of the Board of Public Works have been delegated to the Director of Public Works.

It is the position of respondent that the Laws of 1923, above cited, control as against the present charter, and that the publication can be made only in a newspaper designated by the circuit judges under the provisions of said statutes.

Respondent also insists that no valid contract was entered into by the city with the Kansas City Daily Democrat, because the Director of Public Works could not take the place of the members of the Board of Public Works mentioned in the ordinance of 1910 for the purpose of making up a Board of Award for the city printing; and further, that even if the contract was valid when made it had expired by limitation; that the contract under the ordinance of 1910, expired on July 1, 1926, and at the time this publication was ordered said contract was no longer in force and effect, and especially so in view of the fact that the ordinance provided for a yearly contract and even at this late date no steps had been taken for the awarding of a contract for the year ending July 1, 1927.

Looking first to respondent's position that the above cited statutes relating to public notices and advertisements and found on pages 324-325 of the Laws of 1923 control as against the provisions of the present city charter, we are met with relator's assertion that the Supreme Court en Banc has already decided this very question contrary to this respondent's contention in a case styled In Re Condemnation of Land v. Boruff, 295 Mo. 28, l. c. 46, decided June 26, 1922, where the court, speaking through Judge GRAVES, said:

"It is further argued, but with less vehemence, that there was no publication, because the notice was published in the Daily Record instead of the Out-West Review. The latter was the paper designated for legal publications by the circuit judges under Section 10405, Revised Statutes 1919. The former was the paper doing the city printing, and the charter provided that such notices as is here involved should be published in the paper doing the city printing. First, it may be said that the charter provision does not necessarily conflict with the State law, supra, nor the Constitution. [State ex rel. v. Seehorn, 246 Mo. l. c. 557, and the cases there cited.] The cases cited in this Seehorn case are Kansas City cases, and go to the doctrine that by virtue of constitutional provisions Kansas City may by charter regulate purely local affairs in the matter of condemnation proceedings. To this the writer did not then agree to the extent that such city could erect a court in which such cases could be tried. Five members of this court held that it could. It is true that two of the five ruled reluctantly, and for a special reason assigned, yet it was so ruled. The doctrine announced in that case is conclusive here, and for like reasons."

This phase of the Boruff case being expressly ruled on the authority of State ex rel. v. Seehorn, 246 Mo. 541, we turn to the opinion in that case for a statement of the facts and principles there involved. Article 6 of the Charter of Kansas City, adopted in 1908 and continued in force until the adoption of the present new charter, purported to confer jurisdiction upon the municipal court in proceedings to condemn private property "for straightening, opening, widening, extending or altering, for public use, any street, avenue, alley," etc., and also jurisdiction in supplemental proceedings for the same purposes in case of an error or defect in original proceedings. Section 1 of Article 6 of the Constitution is as follows: "The judicial power of the State, as to matters of law and equity, except as in this Constitution otherwise provided, shall be vested in a Supreme Court, the St. Louis Court of Appeals, circuit courts, criminal courts, probate courts, county courts and municipal corporation courts." Section 16 of Article 9 of the same instrument vests in cities of over one hundred thousand inhabitants power to adopt a charter for their own government "consistent with the Constitution and laws of this State." It was urged by relators that as the Constitution does not define the jurisdiction of "municipal corporation courts," and that as Section 22 of Article 6 thereof confers upon circuit courts "exclusive original jurisdiction in all civil cases not otherwise provided for," the circuit court alone has jurisdiction over such civil proceedings as the condemnation of real estate for public use. Respondent maintained that the condemnation of property for public

streets is purely a matter of municipal concern, and that as the Constitution by Section 16 of Article 9 conferred upon the qualified voters of the city full power and control over such matters, by the adoption of a charter and making provisions therefor the voters spoke with authority equal to that with which the General Assembly might have spoken in the absence of a charter. Thereupon the opinion thus deals with the issue raised and pertinent in this case (l. c. 557):

"Under repeated decisions of this court it is settled beyond question that the condemnation of property in municipalities, for use as public streets, is a matter pertaining to local municipal government as contradistinguished from such as belong to the domain of general State control; and further, that the procedure prescribed by the charter in such condemnation cases, 'not inimical to the general scope of the policy of our Constitution and laws,' will prevail as against provisions of the general law upon the same subject. The language last quoted was used by LAMM, J., in the case of Brunn v. Kansas City, 216 Mo. l. c. 117, and discussing the procedure prescribed by the charter in the exercise of the right of eminent domain, it is further said: 'Such special provisions may be likened to exceptions read into or grafted on the general law.' These propositions are fully supported by the following authorities: Brunn v. Kansas City, 216 Mo. 108; State ex rel. v. Telephone Co., 189 Mo. 83; Kansas City v. Bacon, 147 Mo. 259; State ex rel. v. Field, 99 Mo. 352; Kansas City v. Oil Co., 140 Mo. 458; Kansas City v. Ward, 134 Mo. 172; Kansas City ex rel. v. Scarritt, 127 Mo. 642. From the foregoing it follows that as the proceedings sought to be prohibited involved a subject of purely local concern, it was within the power of the city to confer jurisdiction thereof upon the municipal court, as provided in its charter."

The substance of the doctrine stated in the Seehorn case, and properly invoked in the Boruff case, thus appears to be that "when special charter provisions relating to procedure in condemnation cases are not inimical to the general scope of the policy of our Constitution and laws, then such special provisions govern as against the provisions of general law—that is, such special provisions may be likened to exceptions read into or grafted on the general law."

The doctrine is so stated in Brunn v. Kansas City, 216 Mo. 108, l. c. 117-8, supported by an unbroken line of previous decisions, and apparently applies to the instant case. Respondent insists, however, that it is not applicable and controlling, for two reasons which we shall discuss in the order lodged.

First, that by virtue of the "Enabling Act" of 1887 (Laws 1887, p. 42, substantially carried forward into Revised Statutes 1919, and

including Sections 8854-5-6-7-8 thereof), the Charter of 1908 superseded the general law embodied in Sections 10405-6-7, Revised Statutes 1919; that after the city council's approval of the ordinance involved in the Boruff case the above five sections of this enabling act were repealed (Laws 1921, Ex. Sess., p. 110), and were not in force at the time of the adoption of the present charter, and hence the General Assembly has granted Kansas City no power to supersede any of its general laws by the new charter. We are not impressed with this argument, because obviously any preeminence of Kansas City's charter provisions over general laws fundamentally rests upon the constitutional grant of power to frame a charter appearing in Section 16 of Article IX of the Constitution of 1875 and does not depend upon an act of the General Assembly. [Kansas City v. Oil Co., 140 Mo. 458, l. c. 467.] This suggested reason is dismissed as groundless.

Second, that while the charter provision and ordinance ruled upon in the Boruff case were not in fact inconsistent with the general scope of the policy of our Constitution and laws as they existed at that time, yet the Constitution as amended in 1920 (Laws 1921, pp. 701 to 703), and Sections 10405-6-7, as repealed and superseded by the Act of 1923 (Laws 1923, pp. 324-5), declared a policy of the law to which the new charter provision and ordinance in question are inimical.

Sections 16 and 17 of Article IX of the Constitution of 1875 were repealed and new Sections 16 and 17 adopted in lieu thereof on November 2, 1920 (Laws 1921, pp. 701-2-3). New Section 16 authorizes any city having a population of more than one hundred thousand inhabitants to frame and adopt a charter for its own government "consistent with and subject to the Constitution and laws of the State." The opening clause of old Section 16 contained the identical words here quoted, but it also contained the following words at the close of the section, which are omitted from new Section 16: "but such charter shall always be in harmony with and subject to the Constitution and laws of the State." Both clauses were in old Section 16 considered with the charter provisions and ordinances in the Boruff, Seehorn and other decisions above cited. If the latter clause lent any additional restrictive force whatever to the old section in its relation to special charter provisions its omission from the new section would apparently aid the position of relator rather than that of respondent. We regard the omission as immaterial to the issues in this case.

Sections 10405-6-7, Revised Statutes 1919, relating to public notices and advertisements in cities having a population of more than one hundred thousand inhabitants, were repealed and new sections bearing the same numbers were enacted in lieu thereof in 1923 (Laws

1923, pp. 324-5). Respondent insists that there could have been no conflict between the old sections and the charter provision and ordinance considered in the Boruff case except as to the rate of publication, but that the Act of 1923 introduces new features into the law, such as the provision that in cities of one hundred thousand inhabitants or more no order of publication can be validly published in any paper except one of general circulation therein and having been previously published in the city for at least one year, and a further provision vesting a large discretion in the circuit judges in designating papers which are qualified, and that these innovations constitute an announced policy of the law with which the charter provision and ordinance here in question conflict, and that under the present law it is a matter of state as distinguished from municipal or local concern as to what newspaper should be designated for an order of publication.

The designation of the newspaper in which an order of publication in a condemnation case shall be published is but an incident of the procedure, and as heretofore indicated, the settled law in this State is that the procedure prescribed by a special city charter, framed under a constitutional grant of power, in condemnation cases, is a matter that pertains to local municipal government as contradistinguished from matters belonging to the domain of general state control, and will prevail as against provisions of the general law, unless such procedure is not "consistent with and subject to the Constitution and laws of the State." Therefore, the only question left for our determination is whether or not this part or incident of the condemnation procedure presents a conflict within the meaning of the constitutional provision just quoted, and in this we are substantially aided by prior decisions of this court.

As far back as 1889 Judge BLACK, construing this constitutional provision in connection with Kansas City's charter in State ex rel. Kansas City v. Field, 99 Mo. 352, l. c. 355, while holding that when such a city has adopted a charter it is not "out of, and beyond, all legislative influence," yet said: "Subject to this superior power of the Legislature, the Constitution accords to any city having the requisite population the right to frame and adopt a charter for its own government, which will supply its peculiar wants. Charters thus adopted will, of necessity, be more or less at variance, and that they will be unlike, in many respects, is within the contemplation of the Constitution. It is also within the fair contemplation of the Constitution that a charter thus adopted may embrace the entire subject of municipal government, and be a complete and consistent whole."

In Kansas City v. Oil Co., 140 Mo. 458, l. c. 470, it was insisted that because the General Assembly had by a general law, passed

in 1885 and amended in 1887, provided a mode of procedure for condemnation of land for municipal purposes different from that adopted by the charter of 1889 as amended in 1895, the latter should fail because they were unlike. Of this contention, Judge GANTT said, "If this view can be maintained, it simply nullifies Section 16 of Article IX of the Constitution. But counsel by this contention begs the question. He ignores the foundation fact that the organic law conferred upon the municipality the power to adopt *the special charter,* and it was not restricted to the adoption of a method for condemning streets, alleys, parks, *et cetera,* already prescribed by the general statutes, but was unlimited save by the provision that it must be in harmony with the laws and Constitution of the State. Mere differences in detail do not show any want of harmony whatever. Every essential of the Constitution and every salutary principle of the statute is preserved. Thus the body of freeholders who estimate the damage, the saving of the right to a common-law jury, the payment of the damages or compensation to the owner or into court for him before his proprietary rights are disturbed, are all preserved in the charter."

Again, Judge GANTT speaking for this court, en banc, said in Kansas City v. Bacon, 147 Mo. 259, l. c. 272-3: "The power to frame a special charter for itself would be meaningless and nugatory if the construction should obtain that its provisions must all be *in haec verba* with the provisions relating to the same subject in some other statute—relating to cities in their class. 'Consistent with' does not import exact conformity, but means substantial harmony with the principles of the Constitution and the general laws of the State. That a charter conferring the power to condemn lands for public parks is not repugnant to our laws is abundantly established by the power granted to the various cities of the State to exercise that right; that the special charter may prescribe a different *modus operandi,* is immaterial so long as the fundamental principles of due and just compensation, and an opportunity to be heard is secured to the landowner."

Finally, in Brunn v. Kansas City, 216 Mo. 108, l. c. 117, from which opinion we have already quoted, Judge LAMM construes this constitutional provision to mean "not inimical to the general scope of the policy of our Constitution and laws."

We have been referred to no constitutional provision with which the charter provision and ordinance in question are not consistent, and after a careful consideration of the above mentioned new provisions of the Act of 1923 (Laws 1923, pp. 324-5), we feel constrained to hold that they are not so at variance with said charter provision

and ordinance as to condemn the latter as inconsistent with the provisions of said act within the meaning of the Constitution.

Turning to respondent's contention that no valid contract was entered into by the city with the Kansas City Daily Democrat because the Director of Public Works could not take the place of the members of the Board of Public Works mentioned in the Ordinance of 1910 for the purpose of making up a Board of Award for the city printing, we think this too must be ruled against respondent. Section 456 of the new charter provides that "all ordinances, regulations and resolutions in force at the time this charter takes effect, and not inconsistent with the provisions of this charter, shall remain and be in force until altered, modified or repealed by or under authority of this charter or ordinance." Section 458 of Article XX of the new charter further provides that an administrative code be drafted by a code committee appointed by the mayor, for the general organization and procedure of carrying out the administrative functions and activities of the city under the new charter. In compliance therewith such administrative code, being Ordinance No. 52820, was prepared, introduced and passed April 14, 1926, in the City Council of Kansas City. Section 16 thereof, among other things, provides: "Insofar as not inconsistent with the provisions of the charter, the Director of Public Works is hereby declared to be the successor to the Board of Public Works and the members thereof, . . . and he does hereby succeed to the duties of said Board of Public Works and the members thereof."

Thus under the provisions of the Charter of Kansas City and the Administrative Code, the duties of the old members of the Board of Public Works under the charter of 1908 are now performed under the new charter by the Director of Public Works, and among other things it was his duty to act as a member of a board consisting of the Commissioner of Purchases and Supplies (who under the new charter took the place of the old Purchasing Agent), the City Counselor and the Director of Public Works, sitting as a Board of Award, to award contracts for doing the city printing under said Ordinance No. 5180 approved May 23, 1910. It thus appears that the city's contract with the Kansas City Daily Democrat for the purpose of doing the city printing, was duly and legally awarded by said board and is not *ultra vires* and void as contended by respondent.

This printing contract bears date of June 11, 1926, and expressly recites that it is "for a period ending July 1, 1926, and until a new contract is made therefor." The order of publication was dated July 16, 1926. We discover no merit in respondent's suggestion that at the time this publication was ordered said contract was no longer in force and effect.

For the reasons above stated the preliminary rule heretofore issued herein should be made permanent. It is so ordered. All concur.