STATE OF MISSOURI at the relation of the CITY OF ST. LOUIS, a Municipal Corporation, Relator, v. FRANK C. O'MALLEY, Judge of the Circuit Court of the City of St. Louis.—122 S. W. (2d) 940.

Court en Banc, December 20, 1938.

*Edgar H. Wayman, John T. Hicks* and *Francis J. Sullivan* for relator.

*Francis R. Stout* for respondent.

660

HAYS, J.—This is an original proceeding in prohibition by which the relator seeks to restrain respondent as judge of division number one of the Circuit Court of the City of St. Louis from further proceeding in an action there pending against the City, instituted by Eugene Schmid et al. for the assessment, by commissioners, of consequential damages to their property abutting upon Ivory Avenue in said city as the result of lowering the grade of said avenue.

To the last amended petition of said property owners the City filed a demurrer setting up that the circuit court was without jurisdiction of the subject matter of the proceeding and that the lack of jurisdiction is apparent on the face of said petition. The demurrer was overruled by the respondent circuit judge, and upon him, shortly after, our preliminary rule to show cause was issued herein. Respondent demurred thereto. So that, the sufficiency of said petition, as framed, to confer jurisdiction is the question for decision.

In substance the petition is as follows:.

The parcel of land here involved, improved with concrete and brick structures suitable for various industrial uses, fronted and abutted, for a distance of 114 feet upon Ivory Avenue in St. Louis which formed a continuation of State Highway No. 61, and was crossed at that point by tracks of the Missouri Pacific Railway Company. The change in the street or highway was a grade separation, brought about by excavating the street so as to make it an "underpass" at that intersection. The underpass, it is alleged, was so constructed in front of said parcel and the buildings upon it as to lower the previously existing grade an average depth of ten feet. The change was made without the property owners' consent, and rendered the property valueless and damaged it to the extent of $60,000.

This (it is averred), pursuant to Ordinance No. 40349, passed by the City and approved by the mayor, and to plans proposed by the State Highway Department which were approved by the Board of Public Service; so that the change of grade was made under the control and direction of the City and in conformity with said ordinance and the Highway Commission's plans and specifications.

In substance the prayer is that the court proceed as in the manner provided by the Constitution, statutes, and laws of the State to assess and ascertain the amount of plaintiffs' damages and appoint commissioners to estimate and determine same and that plaintiffs be awarded a judgment against defendant City therefor.

The ordinance discloses that its object was to authorize and direct the mayor and comptroller to make application for the allotment of Federal funds for highway construction within the city limits and to execute an agreement in behalf of the City to maintain a proposed and desirable underpass (that above described) to afford Federal Highway Sixty-one free and uninterrupted passage to the streets of St. Louis. The City therein agreed that if such project were approved by the Secretary of Agriculture, and, if so approved, the underpass were constructed by the Highway Department and said Secretary of Agriculture, the City thereafter at its own cost and expense would maintain it and make ample provision each year for such maintenance. The City assumed the duty of securing the land necessary for the widening of Ivory Avenue. The City Counselor took no action, under said ordinance or otherwise for appointment of commissioners to assess damages and benefits or other action. Nor was any benefit district defined by the Board of Public Service or mentioned in the ordinance. Accepting the City's said offer as made, the State Highway Commission undertook and completed said underpass as planned.

The action as brought by the property owners declaredly was predicated upon Section 21 of Article II of the Constitution of the State and Section 7222 of the Revised Statutes of 1929.

Section 7222 in substance provides that in all cases where the proper authorities in any city of this State have graded or regraded or may hereafter grade or regrade or change the grade of any street or alley, causing damage to private property for public use, within the meaning of Section 21 of Article II of the Constitution, without the consent of the owners of such property, commissioners may be appointed to estimate and determine the benefits, if any, resulting to and the damages, if any, sustained by the property. The action may be instituted by the city authorities, or by any property owner whose property has been or is likely to be damaged by the public improvement. If instituted by the city authorities a benefit district must be defined.

This statute is derived from Laws of 1885, page 47, amended in Laws of 1887, page 37, carried down through all the subsequent general revisions of the statutes, as, respectively, Section 1815 in 1889, Section 6109 in 1899, Section 9553 in 1909, Section 8676 in 1919, and in 1929 appears as Section 7222.

The respondent cites in support of his contention that the action instituted by the property owners was properly founded upon said Section 7222, the cases City of St. Louis v. Lang, 131 Mo. 412, 33 S. W. 54, City of St. Louis v. Wallrath et al., 293 Mo. 385, 239 S. W. 110, and City of Albany v. Gilbert, 144 Mo. 224, 46 S. W. 157.

City of St. Louis v. Wallrath et al., supra, was a suit to enjoin some one hundred and fifty property owners from maintaining actions against the city for damages sustained by their properties and caused by a change made by the city in the grade of a street upon which their properties abutted. There was then and previously pending in the circuit court a proceeding brought by the city pursuant to ordinance and the city charter for the ascertainment of damages and assessments of benefits; but, although the work of regrading had been completed, final judgment in condemnation had not been entered, nor had compensation been paid to the defendant property owners. The fact that the property had so been damaged without prepayment to the property owners was by them set up in bar. That plea was on motion stricken by the trial court and the cause dismissed. This court affirmed. Obviously, the decision was mistakenly predicated in part on Section 7778, Revised Statutes 1919, which was expressly applicable only to cities of the first class. The opinion was a divisional one and its authoritative value was later limited by the decision en banc in Tremayne v. City of St. Louis, 320 Mo. 120, 6 S. W. (2d) 935; only the result was approved, the court (l. c. 145, last par.) saying:

". . . There is an indiscriminate intermingling of the St. Louis charter provisions, statutes pertaining to St. Louis, and statutes pertaining to statutory cities of the first class, and even lower. . . ."

City of Albany v. Gilbert, supra, was a proceeding instituted by a so-called "lower" class city, namely, fourth class, to which a similar statute (Sec. 1589, R. S. 1889) was properly held applicable.

In the Lang case, supra, the city instituted the proceeding, under Sections 1815-1821, Revised Statutes 1889 (now Secs. 7222-7227, R. S. 1929), to assess damages *and benefits* caused by changing the grade of a street. The city had prior thereto provided by proper ordinance (so held in the opinion rendered by the court) for changing the grade and *defining the limits within which private property would be benefited* by the grading. The circuit court obtained jurisdiction of all persons interested and the proceeding took the course provided by said statutes. Lang undertook—too late under the law— to except to the report of commissioners; he was refused leave to file answer and suffered judgment by default, and this court affirmed.

As regards the present case the distinguishing features of that case are (1) that the *City* instituted the proceeding under what is now Section 7222 and *no question was raised* as to the applicability of that section; and (2) that the benefit district was defined by ordinance; whereas, the instant proceeding was initiated by the *property owners* and (as already noted here) no city ordinance had been passed defining any benefit district. So, it is apparent that, since the propriety of the form of action was not in issue in that case, the decision therein is without application here.

In this connection the relator cites Hickman v. City of Kansas, 120 Mo. 110, 25 S. W. 225. That was a case action for consequential damages against that city for changing, pursuant to ordinance enacted, the grade of a street on which Hickman's property abutted. The defense was that the action as brought was not maintainable, and that the plaintiff should have proceeded under the Act of 1885, page 47 (amendatory act of 1887, supra). The trial court denied the city's demurrer to the evidence offered upon that theory, and judgment went for plaintiff. This court affirmed, saying in part (l. c. 118): ". . . Unquestionably, the Legislature might have provided a mode of procedure for ascertaining and paying the owner his damages under the constitutional provision giving the right, that would have been exclusive; but the Act of 1885-1887 did not undertake to enforce this constitutional right. Its whole scope was an attempt to provide a remedy for its invasion. . . ."

And further (l. c. 119): ". . . *The act does not give the owner the right of initiating the proceeding* or process, or other means of obtaining payment after the amount of his damages has been

664

ascertained. It is true the original act did provide that the application to the circuit court for the ascertainment of the amount of damages by petition might be made 'either by the city authorities, or the owner of the property for which damages are claimed,' but the amendment of 1887 (p. 37) required that, before the filing of such petition the city authorities must first define or provide for a benefit district. It is also true that Section 7 of the original act did provide for execution against the municipality in the event that damages were not paid within six months after they were finally ascertained by the court, but this section was repealed by the amended act (p. 37). Thus the owner was left without power of initiating the statutory proceeding for the ascertainment of his damages, . . . *by reason of the fact that no benefit district was ever defined by the defendant. . . .*" (Italics ours.)

The case at bar is affected with that same infirmity.

■ Nor does the constitutional guaranty relied upon by the respondent by its inherent power sustain the proceeding now under review.

By Section 21 of Article II of the Constitution of 1875 it is provided that "private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; . . ."

It was early ruled and thereafter continuously maintained by this court that a city cannot change the grade of a street to the damage of a lot abutting upon it without compensation to the owner. Householder v. Kansas City, 83 Mo. 488; Hickman v. Kansas City, 120 Mo. 110, 116-117, 25 S. W. 225; also, that this article gives an absolute right and is self-enforcing, and although there be no statutory law for the ascertainment and payment of the compensation so provided for, the party entitled to this right may resort to any common-law action that will afford him adequate and appropriate means of redress. [Householder case, supra; Tremayne v. City of St. Louis (en banc), 320 Mo. 126, 6 S. W. (2d) 935.]

The relator's position as stated in its brief is that it is outside the jurisdiction of the circuit court to entertain this character of suit for the reason that "all condemnation proceedings are governed exclusively by the charter of the City of St. Louis, and further that if the plaintiffs have suffered damages as a result of the grade elimination referred to in their petition, their remedy would come under the provisions of Section 7567, R. S. 1929" (Sec. 8977, R. S. 1919, Laws 1919, p. 600), which section, so far as pertinent here, reads as follows:

"Whenever, in cities that now or may hereafter have a population of three hundred thousand inhabitants or more, property is disturbed

or damaged by the grading, regrading or other change of grade of any street . . . or any part thereof, and the owner or owners or persons having an interest therein are lawfully entitled to remuner-ation or damages under the Constitution and laws of this State, all actions for such damages shall be instituted within one year from the time such work . . . is completed. . . ."

After the work was completed an action in tort under the common law or under the cumulative authority of the statute (Sec. 7567) was the only remedy available to the property owners in the prem-ises. Respondent's contention in this behalf overlooks or disregards the provisions of the City's charter—particularly Article 21, Section .4—which is in harmony with the Constitution and with the other-wise only applicable statutes, which latter—now Sections 7567 to 7571, inclusive, Revised Statutes 1929—are superseded by the char-ter provisions (State ex rel. Kansas City v. Field, 99 Mo. 352, 12 S. W. 802; Tremayne case, supra) as the work now in review falls within municipal regulations not "inimical to the general scope of the policy of our Consttiution and laws." [State ex rel. v. Lucas, 317 Mo. 255, 263, 296 S. W. 781, 784.]

In the case of State ex rel. Kansas City v. Field, supra, decided before the statutory revision of 1889, the question was whether Kan-sas City by force of its then recently adopted charter was withdrawn from the Act of 1885 and the Amendment of 1887. This court held that Kansas City was withdrawn. The substance of the decision as shown in the headnotes, is as follows:

"The charter of Kansas City adopted April 8, 1889, by its qualified voters, in pursuance of Article 9, Section 16, of the State Constitu-tion, and the act of the Legislature of March 10, 1887 (Acts, p. 42), authorizing cities having a population of more than one hundred thousand to frame a charter, creates for said city a complete system of local self-government. Such charter supersedes the act of the Leg-islature of March 26, 1885 (Acts, p. 47), and the amendatory act of March 31, 1887 (Acts, p. 37), in relation to the manner of asses-sing damages and benefits in grading and regrading streets."

Obviously, in this respect the City of St. Louis is in the same cata-gory that Kansas City is in. Article 21, Section 4 of St. Louis Char-ter, relative to changing grade of streets provides, in part as follows:

"It shall be the duty of the commissioners, except as herein other-wise provided, in the condemnation or the damaging of property for highways, streets . . . or in the changing of grade of streets . . . to ascertain the value of the property proposed to be taken and the actual damage done to private property. . . . For the payment of all such damages the commissioners shall assess against all the lots or parcels of property . . . therein specially benefited

by the proposed public work or improvement, separately, . . . and against the city the balance of the damages over and above the aforesaid special benefits assessed; . . ."

An elucidating disquisition comprehensive of our subject which may be found in the decision in the Tremayne case, supra, renders further comment unnecessary.

The circuit court having proceeded without jurisdiction of the subject matter of the proceeding herein above reviewed, our provisional rule in prohibition is now made absolute. All concur.